No. 25-1048

# United States Court of Appeals
## for the First Circuit

CHARLES REDDICKS,
*Petitioner-Appellant,*

*v.*

KENNETH LIZOTTE, SUPERINTENDENT,
*Respondent-Appellee.*

ON APPEAL FROM A FINAL JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**BRIEF OF THE RESPONDENT-APPELLEE**

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

Nicole Nixon, 1st Cir. No. 1203874
*Assistant Attorney General*
Tara L. Johnston, 1st Cir. No. 1196249
*Assistant Attorney General*
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
Nicole.M.Nixon@mass.gov
Tara.Johnston@mass.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................2

TABLE OF AUTHORITIES ..........................................................6

JURISDICTIONAL STATEMENT ................................................13

QUESTIONS PRESENTED.............................................................13

STATEMENT OF THE CASE...........................................................14

    I.     PROCEDURAL HISTORY...............................................14

         A.    State-court proceedings...........................................14

         B.    Federal proceedings. ...............................................16

    II.    STATEMENT OF FACTS...............................................16

SUMMARY OF ARGUMENT .........................................................18

ARGUMENT ....................................................................................20

    I.     APPELLANT MUST OVERCOME A HIGH BAR TO OBTAIN RELIEF. ..........................................................20

         A.    Standard of review. ................................................20

         B.    A habeas petitioner cannot obtain relief unless he shows that any trial error had a substantial and injurious effect on the jury's verdict. ...............................................22

    II.    APPELLANT IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT HIS EQUAL PROTECTION AND SIXTH AMENDMENT RIGHTS WERE VIOLATED DURING JURY SELECTION. ...............................................23

         A.    Background. ..............................................................23

             1.    Trial-court proceedings....................................23

             2.    The appeal.........................................................26

B.    The MAC reasonably and correctly rejected appellant's claim that the Commonwealth's inquiry into prospective jurors' CORI violates the Equal Protection Clause. ................28

    1.    The Equal Protection Clause. ..........................................28

    2.    There is no clearly established law applicable to appellant's claim. ...........................................................29

    3.    Even if *Batson* applies here, the MAC reasonably denied relief. ....................................................................30

C.    The MAC reasonably and correctly rejected appellant's claim that the CORI inquiries violated the Sixth Amendment. ..............................................................................31

    1.    The Sixth Amendment. ....................................................32

    2.    Appellant failed to identify any clearly established federal law that applies to his claim. ..............................32

    3.    Even if *Duren* governs here, the MAC did not unreasonably or incorrectly apply it. ..............................33

D.    The MAC reasonably and correctly rejected appellant's claim that the peremptory strikes against jurors no. 47 and 122 violated the Equal Protection Clause. .........................34

    1.    Appellant failed to offer a precise enough objection to alert the trial judge to the fact that he was lodging a *Batson* objection and the available information in record did not support an inference of discrimination in the prosecutor's strikes. .................35

    2.    The substantial gaps in the record support the MAC's conclusion that appellant did not establish a prima facie case under *Batson* .....................................37

III.    APPELLANT IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT HIS STATEMENTS TO THE POLICE WERE INVOLUNTARY. ..............................................................................41

A.    Background. ...............................................................................41

B.    Clearly established law. ...........................................................42

C.    The MAC reasonably and correctly denied relief....................43

IV.    APPELLANT IS NOT ENTITLED TO RELIEF ON HIS
CLAIM THAT THE SEARCH OF HIS CELL PHONE IN A
PRIOR CRIMINAL CASE VIOLATED HIS FOURTH AND
FOURTEENTH AMENDMENT RIGHTS. ......................................46

A.    Background. ..............................................................................46

B.    The MAC's reliance on an adequate and independent
state-law ground to reject appellant's claim bars federal
habeas review. ...........................................................................47

C.    Pursuant to *Stone* v. *Powell*, this Court is precluded from
reviewing appellant's Fourth Amendment claim. ...................50

V.    APPELLANT IS NOT ENTITLED TO RELIEF ON HIS
CLAIM THAT INTRODUCTION OF PRIOR-BAD-ACT
EVIDENCE VIOLATED HIS FEDERAL DUE PROCESS
RIGHTS.........................................................................................53

A.    The MAC rejected appellant's claim on its merits. .................54

B.    Clearly established law. ...........................................................55

C.    The MAC reasonably and correctly rejected appellant's
federal due process claim..........................................................56

VI.    APPELLANT IS NOT ENTITLED TO RELIEF ON HIS
CLAIM THAT A RESTRICTION ON CROSS-
EXAMINATION OF A WITNESS VIOLATED HIS
CONFRONTATION AND DUE PROCESS RIGHTS. ....................59

A.    Clearly established law. ...........................................................59

B.    The MAC's rejection of appellant's claim was based on a
reasonable determination of the facts and is supported by
the record...................................................................................60

C.    The MAC reasonably and correctly rejected appellant's
claim..........................................................................................62

4

VII.   APPELLANT IS NOT ENTITLED TO RELIEF ON HIS
       CLAIM THAT INTRODUCTION OF IMPROPER
       IDENTIFICATION EVIDENCE VIOLATED HIS FEDERAL
       DUE PROCESS RIGHTS.................................................................64

       A.    The MAC's decision was based on a reasonable
             determination of the facts.........................................................65

       B.    The MAC reasonably and correctly rejected appellant's
             federal due process claim.........................................................66

CONCLUSION.........................................................................................68

Certificate of Compliance With Rule 32(a).............................................70

Certificate Of Service.............................................................................70

ADDENDUM ..........................................................................................71

# TABLE OF AUTHORITIES

## Cases

*Andrew v. White*,
   145 S.Ct. 75 (2025)..........................................................................56

*Arizona v. Fulminante*,
   499 U.S. 279 (1991)..........................................................................42

*Ballard v. United States*,
   329 U.S. 187 (1946)..........................................................................33

*Batson v. Kentucky*,
   476 U.S. 79 (1986)................................................................... *passim*

*Bebo v. Medeiros*,
   906 F.3d 129 (1st Cir. 2018)..................................................... 29, 33

*Black v. Workman*,
   682 F.3d 880 (10th Cir. 2012) .....................................................31

*Brecht v. Abrahamson*,
   507 U.S. 619 (1993)..........................................................................22

*Brown v. Davenport*,
   596 U.S. 118 (2022)..................................................... 22, 59, 64, 68

*Brown v. Ruane*,
   630 F.3d 62 (1st Cir. 2011).............................................................66

*Bui v. DiPaolo*,
   170 F.3d 232 (1st Cir. 1999)...........................................................63

*Cabrera v. Clarke*, Civil Action No. 08-10531-RWZ, 2010 WL 1529474
   (D. Mass. 2010) (unpublished) ......................................................49

*Caldwell v. Maloney*,
   159 F.3d 639 (1st Cir. 1988).................................................... 31, 37

*Chambers v. Mississippi*,
    410 U.S. 284 (1973)...................................................................... 59, 60

*Clemons v. Luebbers*,
    381 F.3d 744 (8th Cir. 2004) ...............................................................49

*Coleman v. Thompson*,
    501 U.S. 722 (1991)...................................................................... 47, 48

*Colorado v. Connelly*,
    479 U.S. 157 (1986)............................................................................44

*Commonwealth v. Cabrera*,
    449 Mass. 825, 874 N.E.2d 654 (2007)...................................... 48, 49

*Commonwealth v. Cousin*,
    449 Mass. 809, 873 N.E.2d 742 (2007).............................................24

*Commonwealth v. Oliveira*,
    74 Mass. App. Ct. 49, 904 N.E.2d 442 (2009) ...............................63

*Commonwealth* v. *Ringuette*,
    60 Mass. App. Ct. 351, 801 N.E.2d 813 (2004) ...............................48

*Commonwealth v. Tolentino*,
    422 Mass. 515, 663 N.E.2d 846 (1996) .............................................27

*Commonwealth v. Williams*,
    431 Mass. 71, 725 N.E.2d 217 (2000) ...............................................48

*Coningford v. Rhode Island*,
    640 F.3d 478 (1st Cir. 2011)...................................................... 55, 59

*Cooper v. Bergeron*,
    778 F.3d 294 (1st Cir. 2015)...............................................................43

*Cronin v. Commissioner of Probation*,
    783 F.3d 47 (1st Cir. 2015).................................................................21

*Davis v. Alaska,*
    415 U.S. 308 (1974) ................................................................... 59, 60

*Davis v. Ayala,*
    576 U.S. 257 (2015) ...........................................................................22

*Delaware v. Fensterer,*
    474 U.S. 15 (1985) ............................................................................64

*Delaware v. Van Arsdall,*
    475 U.S. 673 (1986) ............................................................... 60, 62, 63

*Dickerson v. United States,*
    530 U.S. 428 (2000) ..........................................................................42

*Dowling v. United States,*
    493 U.S. 342 (1990) ..........................................................................56

*Downs v. Lape,*
    657 F.3d 97 (2d Cir. 2011) ................................................................50

*Duren v. Mississippi,*
    439 U.S. 357 (1979) ................................................................... *passim*

*Ellen v. Brady,*
    475 F.3d 5 (1st Cir. 2007) .................................................................63

*Engle v. Isaac,*
    456 U.S. 107 (1982) ..........................................................................56

*Fields v. Thaler,*
    588 F.3d 270 (5th Cir. 2009) ............................................................36

*Flowers v. Mississippi,*
    588 U.S. 284 (2019) ................................................................... *passim*

*Foster v. Chatman,*
    578 U.S. 488 (2016) .................................................................. 28. 35

*Francis v. Miller*,
    557 F.3d 894 (8th Cir. 2009) ...............................................................49

*Frazier v. Cupp*,
    394 U.S. 731 (1969).............................................................................45

*Fry v. Pliler*,
    551 U.S. 112 (2007).............................................................................22

*Gaskins v. Duval*,
    640 F.3d 443 (1st Cir. 2011)................................................................62

*Gomes v. Silva*,
    958 F.3d 12 (1st Cir. 2020) .................................................................56

*Harrington v. Richter*,
    562 U.S. 86 (2011)............................................................... 20, 21, 54

*Haynes v. Washington*,
    373 U.S. 503 (1963).............................................................................42

*Hernandez v. New York*,
    500 U.S. 352 (1991)........................................................................ 30, 31

*Hodge v. Mendonsa*,
    739 F.3d 34 (1st Cir. 2013)................................................... 50, 54, 55

*Howes v. Fields*,
    565 U.S. 499 (2012).............................................................................20

*Jackson v. Marshall*,
    864 F.3d 1 (1st Cir. 2017) .............................................................. 29, 54

*Jewett v. Brady*,
    634 F.3d 67 (1st Cir. 2011)..................................................................48

*Johnson v. Williams*,
    568 U.S. 289 (2013).............................................................................55

*Kater v. Maloney*,
    459 F.3d 56 (1st Cir. 2006)..................................................................59

*Kirwan v. Spencer*,
    631 F.3d 582 (1st Cir. 2011)..............................................................20

*Lee v. Kemna*,
    534 U.S. 3626 (2002)..........................................................................49

*Linton v. Saba*,
    812 F.3d 112 (1st Cir. 2016)........................................................ 16, 57

*Lockyer v. Andrade*,
    538 U.S. 63 (2006)...............................................................................33

*Lyons v. Brady*,
    666 F.3d 51 (1st Cir. 2012).................................................................56

*Miller-El v. Cockrell*,
    537 U.S. 322 (2003)................................................................ 21, 29, 40

*Miller-El v. Dretke*,
    545 U.S. 231 (2005)................................................................... 28, 39

*Miranda v. Arizona*,
    384 U.S. 436 (1966)............................................................................43

*Montana v. Egelhoff*,
    518 U.S. 37 (1996)...............................................................................56

*Norton v. Spencer*,
    351 F.3d 1 (1st Cir. 2003)...................................................................16

*Richardson v. Marsh*,
    481 U.S. 200 (1987)............................................................................57

*Sanchez v. Roden*,
    753 F.3d 279 (1st Cir. 2014)....................................................... *passim*

*Sanna v. Dipaolo*,
    265 F.3d 1 (1st Cir. 2001)........................................................ 50, 51, 53

*Schneckloth v. Bustamonte*,
    412 U.S. 218 (1973)....................................................................... 42, 44

*Scott v. Gelb*,
    810 F.3d 94 (1st Cir. 2016)....................................................... 37, 38, 40

*Sleeper v. Spencer*,
    510 F.3d 32 (1st Cir. 2007).................................................................16

*Snyder v. Louisiana*,
    552 U.S. 472 (2008)............................................................................28

*Stone* v. *Powell*,
    428 U.S. 465 (1976)............................................................... *passim*

*Taylor v. Louisiana*,
    419 U.S. 522 (1975)............................................................................32

*Teti v. Bender*,
    507 F.3d 50 (1st Cir. 2007)......................................................... 16, 21

*Thiel v. S.Pac. Co.*,
    328 U.S. 217 (1946)............................................................................33

*United States Ex. Rel. Maxey* v. *Morris*,
    591 F.2d. 386 (7th Cir. 1979) ............................................................52

*United States v. Bell*,
    795 F.3d 88 (D.C. Cir. 2015) ............................................................56

*United States v. Forrest*,
    402 F.3d 678 (6th Cir. 2005) ............................................................36

*United States* v. *Girouard*,
    521 F.3d 110 (1st Cir.2008) ..............................................................40

*United States v. Hughes*,
   640 F.3d 428 (1st Cir. 2011) ...................................................................44

*United States v. Jacques*,
   744 F.3d 804 (1st Cir. 2014) ...................................................................44

*United States v. Simmons*,
   122 F.4th 1256 (11th Cir. 2024) ..............................................................41

*United States v. Twomey*,
   806 F.2d 1136 (1st Cir. 1986) ...................................................................63

*United States v. Wilcox*,
   487 F.3d 1163 (8th Cir. 2007) ............................................................ 36, 37

*United States v. Zappola*,
   677 F.2d 264 (2d Cir. 1982) .....................................................................57

*White v. Woodall*,
   572 U.S. 415 (2014) .................................................................................21

## **Statutes**

28 U.S.C. § 1291 .........................................................................................13

28 U.S.C. § 2241 .........................................................................................13

28 U.S.C. § 2253 .........................................................................................13

28 U.S.C. § 2254 ............................................................................ 13, 20, 67

28 U.S.C. § 2254(d) ............................................................................... 20, 43

28 U.S.C. § 2254(e)(1) ............................................................................ 16, 21

M.G.L. c. 6, § 172 ......................................................................................26

Mass. R. App. P. 27.1 .................................................................................15

## JURISDICTIONAL STATEMENT

Charles Reddicks ("appellant") appeals a judgment of the United States District Court in Massachusetts, denying his habeas corpus petition. The district court had jurisdiction under 28 U.S.C. §§ 2241 and 2254 because appellant alleged that his custody pursuant to a state-court judgment violated the federal Constitution.

The district court denied the petition on December 4, 2024, dismissed it the next day, and granted a certificate of appealability as to all issues raised therein. Appellant filed a notice of appeal on December 20, 2024. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## QUESTIONS PRESENTED

(1) Whether the Massachusetts Appeals Court ("MAC") reasonably rejected appellant's claims that his Equal Protection and Sixth Amendment rights were violated by the Commonwealth's inquiry into prospective jurors' Criminal Offender Record Information ("CORI") and that his Equal Protection rights were violated by the prosecutor's use of peremptory challenges to strike two African-American jurors after the CORI inquiry revealed their failure to disclose criminal history.

(2) Whether the MAC reasonably rejected appellant's claim that statements he made during a police interrogation were involuntary.

(3) Whether this Court should decline to review appellant's claim that his Fourth and Fourteenth Amendment rights were violated by an improper search of a cell phone, where the MAC resolved this claim on an adequate and independent state-law ground and review of the Fourth Amendment aspect is foreclosed by *Stone v. Powell*, 428 U.S. 465 (1976).

(4) Whether the MAC reasonably rejected appellant's claim that introduction of evidence showing his past possession of firearms violated due process.

(5) Whether the MAC reasonably rejected appellant's claim that the trial judge impermissibly limited his right to cross-examine a witness.

(6) Whether the MAC reasonably rejected appellant's claim that introduction of lay opinion identification evidence violated due process.

## STATEMENT OF THE CASE

### I.    PROCEDURAL HISTORY.

#### A.    State-court proceedings.

On July 31, 2012, appellant was indicted in connection with the shooting death of Mariano Malave at his home in the Jamaica Plain section of Boston. He was charged with first-degree murder, armed robbery, carrying a firearm without a

license, carrying a loaded firearm without a license, and possession of ammunition without a license. R.5-6,8.[1]

On January 28, 2016, a jury found appellant guilty of second-degree murder and the firearms offenses, and acquitted him of armed robbery.[2] R.16.Ex.12 at 28-36. The court sentenced him to life in prison with the possibility of parole after fifteen years on the second-degree murder conviction, to a concurrent term of five years to five-years-and-one-day on the carrying-a-firearm-without-a-license conviction, and to a consecutive one-day term on the carrying-a-loaded-firearm-without-a-license conviction. R.17-18.Ex.13 at 42-43.

The MAC affirmed his convictions on April 8, 2021. R.893-924. And the Supreme Judicial Court ("SJC") denied his application for leave to obtain further appellate review ("ALOFAR") on August 2, 2021. *See* Mass. R. App. P. 27.1 (describing procedure to seek review of a MAC decision). S.A.505.

---

[1] As used herein, "A.Br." refers to appellant's brief; "R." refers to appellant's record appendix; "S.A." refers to respondent's supplemental answer filed in the district court on May 1, 2023; and "Ex._ at [pg.]" refers to the trial transcripts relating to the state convictions at issue, which were filed as exhibits to respondent's supplemental answer.

[2] After the verdict, the possession-of-ammunition conviction was dismissed as duplicative. R.16.

**B.    Federal proceedings.**

On February 27, 2023, appellant filed his habeas petition and a supporting

memorandum. Docs.No.1 and 2. Respondent answered, lodged the state-court

record, and opposed relief. Doc.No.11. The district court (Young, D.J.) then denied

the petition. Doc.No.23.

**II.    STATEMENT OF FACTS.**

The MAC's recitation of the facts is entitled to a presumption of correctness

that appellant can overcome only with clear and convincing evidence. 28 U.S.C. §

2254(e)(1). *See Linton v. Saba*, 812 F.3d 112, 116 (1st Cir. 2016). This

presumption applies to "'basic, primary, or historical facts,' such as witness

credibility and recitals of external events." *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st

Cir. 2007) (citation omitted). It also extends to factual findings that are implicit in

the state court's rulings. *See Teti v. Bender*, 507 F.3d 50, 58-59 (1st Cir. 2007).

And it applies equally to factual determinations by a state appellate or trial court.

*Norton v. Spencer*, 351 F.3d 1, 6 (1st Cir. 2003).

The MAC summarized the facts as follows:

> [Appellant] and the victim, Mariano Malave, did not know each other
> but both sold marijuana. In April of 2012, [appellant] asked Ian Follette,
> who had previously purchased marijuana from both [appellant] and the
> victim, if he knew "any connects that sold large quantities of marijuana." In
> response, Follette provided [appellant] with the victim's name and contact
> information.
>     On the morning of April 27, 2012, [appellant] sent a text message to
> the victim, identifying himself as "Jonathan," and inquired about purchasing

a pound of marijuana. The purchase was arranged via text messages, and that evening, [appellant] drove to the victim's home located in the Jamaica Plain section of Boston. At 6:20 P.M., a call from [appellant's] cell phone was placed to the victim's cell phone. Around the same time, the victim's girlfriend overheard the victim providing directions to the victim's apartment to an individual over the phone.[3] Upon ending the call, the victim "grabbed a sample of the marijuana," and exited his kitchen into the back hallway of his apartment building. After a brief period of time, the victim returned inside the apartment to retrieve additional marijuana, and then went back to the back hallway area. At this point, three shots were fired at the victim, one of which struck the victim in the head, and another of which struck the victim in the back.

A 911 call was placed, and police reported to the scene shortly thereafter. That same evening, police conducted interviews of nearby witnesses, and obtained a partial license plate number of a blue vehicle that was parked outside the victim's home at the time of the homicide. One witness, Leanne Parker, informed police that shortly before the homicide, while sitting in her vehicle, she observed a black man, with "long dreads" or curls, exit a blue vehicle while talking on the phone and walking toward the victim's home. After a few moments, the witness heard the sound of gunshots and observed the same man run from the house, get into the driver's seat of the blue car, and drive away.

The police traced the partial license plate number that Parker had provided to a 1992 blue Ford Escort registered to [appellant's] grandmother, Catherine Reddicks, at 116 Millet Street. There were six registered drivers who lived at that residence, and of those six individuals, police determined that [appellant] was the only one to fit the description given by Parker. [Appellant] was interviewed by Detective Callahan and Sergeant Detective Daley, and admitted to driving the Ford Escort on April 27, 2012. In his interview, [appellant] admitted to sending text messages to the victim to purchase marijuana, but stated that he had never met the victim in person, and denied involvement in the homicide. [Appellant] was ultimately indicted by a grand jury for murder, armed robbery, carrying a firearm without a license, carrying a loaded firearm without a license, and possession of ammunition without a license.

R.894-896.

---

[3] MAC footnote 3: "At around 6 P.M. that evening, [appellant] communicated with Follette, and notified him that he was going to the victim's home."

17

## SUMMARY OF ARGUMENT

The MAC's rejection of appellant's claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

*First*, the MAC reasonably rejected appellant's claim that the Commonwealth's inquiry into prospective jurors' CORI violates the Equal Protection Clause and the Sixth Amendment. Because there is no clearly established Supreme Court law supporting appellant's claim, it fails. As for the Equal Protection aspect, he has failed to show purposeful discrimination, so he is not entitled to federal habeas relief. Further, the MAC did not contravene any clearly established law, or act unreasonably, when it applied the "fair cross section requirement" test for juries set forth in *Duren v. Mississippi* to reject appellant's Sixth Amendment claim.

The MAC also reasonably rejected appellant's claim that the prosecutor's use of peremptory challenges to strike two jurors violated the Equal Protection Clause. The MAC rejected appellant's claim because he failed to properly raise a *Batson* objection. And it reasonably applied clearly established law in affirming the trial judge's implicit determination that appellant failed to raise an inference of discrimination.

*Second*, the MAC reasonably rejected appellant's claim that statements he made during a police interrogation were involuntary. The MAC reviewed the

totality of the circumstances and reasonably determined that although a detective used improper tactics during the interrogation, they did not overbear appellant's will such that he failed to make statements of his own volition.

*Third*, this Court is precluded from reviewing appellant's claim that a search of his cell phone, conducted in a prior case, violated his Fourth and Fourteenth Amendment rights. The MAC resolved this issue on an adequate and independent state-law ground – collateral estoppel. Moreover, federal habeas review of a Fourth Amendment claim is barred under *Stone v. Powell*.

*Fourth*, the MAC reasonably rejected, on the merits, appellant's claim that introduction of evidence relating to his past possession of firearms violated due process. The challenged evidence was properly admitted for a non-propensity purpose and did not cause undue prejudice.

*Fifth*, the MAC reasonably rejected appellant's claim that the trial judge improperly restricted his ability to cross-examine a witness. The MAC reasonably found that any restriction was permissible, because it merely cautioned about the potential consequences of a particular line of questioning, and did not violate appellant's confrontation or due process rights.

*Finally*, the MAC reasonably rejected appellant's claim that introduction of improper identification evidence violated due process. There is no clearly established federal law supporting appellant's claim. And, in any event, the

challenged testimony did not amount to an improper lay opinion that identified

appellant or the suspect vehicle.

## **ARGUMENT**

## I.    **APPELLANT MUST OVERCOME A HIGH BAR TO OBTAIN RELIEF.**

### A.    **Standard of review.**

The district court's decision is reviewed *de novo*. *Sanchez v. Roden*, 753

F.3d 279, 293 (1st Cir. 2014). This Court "may affirm . . . on any basis apparent in

the record." *Kirwan v. Spencer*, 631 F.3d 582, 587 (1st Cir. 2011) (citation

omitted).

A state court's decision on the merits of a claim is subject to the highly

deferential standard codified at 28 U.S.C. § 2254. *Harrington v. Richter*, 562 U.S.

86, 97 (2011). To obtain relief, appellant must show that the state court's decision

(1) "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States";

or (2) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established law" refers to only the holdings of Supreme Court

decisions in existence at the time the state court renders its decision. *Howes v.

Fields*, 565 U.S. 499, 505 (2012). A state court's decision is "contrary to" clearly

established federal law if it arrives at a conclusion of law that is directly contrary to

Supreme Court precedent or decides a case with materially indistinguishable facts differently than the Supreme Court. *Cronin v. Commissioner of Probation*, 783 F.3d 47, 50 (1st Cir. 2015) (citation omitted). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case." *White v. Woodall*, 572 U.S. 415, 425 (2014). A state court, however, does not unreasonably apply Supreme Court precedent by failing to extend it to a new area. *See id.* at 426.

A state court's decision is "based upon an unreasonable determination of the facts" if the court's resolution of a determinative factual question is "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see Teti*, 507 F.3d at 57-58. As previously noted, the state courts' factual determinations are presumed to be correct, and it is appellant's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. Rather, appellant must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

21

disagreement." *Id.* at 103. This standard "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102 (citation omitted).

### B.    A habeas petitioner cannot obtain relief unless he shows that any trial error had a substantial and injurious effect on the jury's verdict.

Habeas relief on a non-structural trial error is only appropriate if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 126 (2007) (quotation omitted). The burden is on appellant to make such a showing, which equates to actual prejudice; mere speculation that the trial error may have prejudiced him will not suffice. *Davis v. Ayala*, 576 U.S. 257, 268 (2015); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) ("habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless *they can establish* that it resulted in actual prejudice" (emphasis added; quotation omitted)).[4]

---

[4] When a state court has found an error of constitutional magnitude but deemed it harmless, a petitioner must show both that the state court's harmlessness determination was unreasonable and that the error had a substantial and injurious effect on the verdict. *Brown v. Davenport*, 596 U.S. 118, 127 (2022).

## II.   APPELLANT IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT HIS EQUAL PROTECTION AND SIXTH AMENDMENT RIGHTS WERE VIOLATED DURING JURY SELECTION.

Appellant raises two claims related to the jury selection process: (1) the Commonwealth's running of prospective jurors' CORI during jury selection violated the Equal Protection Clause of the Fourteenth Amendment and his Sixth Amendment right to an impartial jury (A.Br.29-40); and (2) the trial judge violated his equal protection rights by allowing the Commonwealth to exercise peremptory challenges against two African-American venirepersons after the CORI inquiry revealed they had failed to faithfully disclose their criminal history (A.Br.27-29). The MAC reasonably and correctly rejected both claims.

### A.   Background.

#### 1.   Trial-court proceedings.

Prior to trial, the parties filed motions in limine regarding the Commonwealth's ability to access prospective jurors' CORI. S.A.10.R.131-135. Appellant argued that allowing the Commonwealth to access this information violated his right under the Sixth Amendment to have a jury drawn from a representative cross-section of the community and his due process right to fundamental fairness. R.131-135. In the alternative, appellant asked that the Commonwealth be required to run prospective jurors' names through the District Attorney's victim-witness database. *Id*. The court granted the parties access to a

prospective juror's CORI after they were declared indifferent and seated.[5] Ex.1 at 82. The Court also ordered the Commonwealth to run the names of potential jurors through its victim-witness database. [6] Ex.1 at 81-82.

During jury empanelment, a CORI inquiry was conducted of each prospective juror who was initially impaneled after voir dire. R.897.Ex.2 at 219-220;Ex.3 at 4-7,125,128-129. The inquiry revealed that six prospective jurors failed to disclose all or parts of their criminal record on their juror questionnaire. R.897.Ex.2 at 220-226;Ex.3 at 4-7,90-94. One had a restraining order against her, and three had relatively minor offenses on their record. R.897.Ex.2 at 220-221;Ex.3 at 4. These four prospective jurors were seated on the jury after the parties agreed that no further inquiry was necessary. *Id*.

The court conducted a voir dire of the remaining two prospective jurors (nos. 47 and 122). Ex.2 at 221-225;Ex.3 at 90-94. Although juror no. 47 indicated on her questionnaire that she had no prior criminal history, the CORI inquiry revealed that she had been charged with several crimes, including motor-vehicle offenses in 2001 and possession of a Class B substance in 2000, all of which were dismissed.

---

[5] In Massachusetts, a prosecutor is authorized to access prospective jurors' CORI as part of their "criminal justice duties." R.900 (citation omitted). *See generally Commonwealth v. Cousin*, 449 Mass. 809, 815-820, 873 N.E.2d 742, 748 (2007).

[6] The prosecutor reported that no one came back as a victim or a witness. Ex.3 at 6.

R.897-898.Ex.2 at 222,223. Upon inquiry, she stated that she did not feel she had to disclose them because they had been dismissed. R.898.Ex.2 at 223-224. The judge credited the juror's response as one she encounters "quite often" and saw no reason to excuse the juror for cause. R.898.Ex.2 at 225. The Commonwealth then exercised a peremptory challenge. *Id*. Defense counsel objected, stating: "I objected to the Commonwealth's ability to run the records, and I just want to preserve that objection." *Id*. Over the objection, the court excused juror no. 47. *Id*.

Although juror no. 122 disclosed that he had been convicted of assault and battery, he did not disclose other charges and convictions that had occurred over a fourteen-year period. R.898.Ex.3 at 90-91. Upon inquiry, the juror explained that all the undisclosed charges had been sealed and, therefore, he did not think that he had to disclose them. R.898-899.Ex.3 at 91-92. The court credited the juror's explanation and declined to excuse him for cause. R.899.Ex.3 at 92-93. The Commonwealth then exercised a peremptory challenge. R.899.Ex.3 at 93. Defense counsel objected, stating:

> . . . everyone so far that [the prosecutor] has run, and I'm not blaming him, that's come back with a record has been African-American, and so it appears to me that the running of records of potential jurors, in Suffolk County, anyhow, leads to the disclosure of criminal records and exclusion of African-American individuals or potential jurors. My client is an African-American. I would object at this point, judge.

R.899.Ex.3 at 94. The court noted counsel's objection and responded that "in the two instances that [the prosecutor] has done that, I've accepted the jurors'

explanations, but that doesn't excuse them from fully revealing their criminal history, and in both of these situations, neither juror faithfully disclosed their criminal history." R.899-900.Ex.3 at 94. The court allowed the prosecutor to exercise his peremptory challenge and excused juror no. 122. R.900.Ex.3 at 94-95. After the jury was sworn in, the court commented that the jury "consist[ed] of at least five African-Americans." R.900.Ex.3 at 160,177-178.

**2.    The appeal.**

On appeal, appellant claimed that the Commonwealth's inquiry into prospective jurors' CORI resulted in the exclusion of two African-American venirepersons and thereby violated his rights to equal protection and an impartial jury. S.A.49-55,379-382. He also argued that the Commonwealth's challenges to jurors no. 47 and 122 were exercised for a discriminatory purpose, and thus, the trial judge abused her discretion in allowing the Commonwealth to strike both prospective jurors. S.A.44-49,378.

The MAC concluded that the Commonwealth's inquiry into prospective jurors' CORI was authorized by M.G.L. c. 6, § 172 as part of a prosecutor's criminal justice duties. R.900. And it found that the evidence appellant put forward, suggesting there is systemic racism in the Massachusetts criminal justice system, was insufficient to declare unconstitutional this practice, which had been approved by the SJC. R.901-902.

Applying the standard for analyzing whether a venire has been drawn from a fair cross-section of the community, the MAC determined that appellant failed to meet his burden of proving a constitutional violation.[7] R.902-903. The MAC disagreed with appellant that the CORI inquiry resulted in the exclusion of jurors simply for having a criminal record. R.904. The court pointed out that the majority of jurors who failed to make the requisite disclosure, all of whom were African-American, were seated on the jury. *Id*. And the prosecutor properly exercised peremptory challenges to excuse the other two. R.904-905.

In rejecting appellant's equal protection claim premised on the prosecutor's use of peremptory challenges against jurors no. 47 and 122, the MAC found that he failed to properly raise a *Batson* objection based on race. R.907-908. The MAC nonetheless concluded that even if he had lodged a proper *Batson* objection, the judge did not abuse her discretion in finding that no inference of discrimination had been established. R.908-910. The MAC noted that the prosecutor's strike for failing to disclose criminal history "appeared to be made for obvious reasons that did not raise any inference of bias." R.909. The court recognized that "[t]hough

---

[7] In so finding, the MAC relied on *Commonwealth v. Tolentino*, 422 Mass. 515, 519, 663 N.E.2d 846, 848-849 (1996), R.902-903, which cites to *Duren v. Missouri*, 439 U.S. 357, 364 (1979) (setting forth the three-part test appellant must meet to establish a prima facie violation of the Sixth Amendment).

[appellant] is African-American, there were, in total, five African-American jurors seated on the sixteen-person jury." R.909.

> **B.    The MAC reasonably and correctly rejected appellant's claim that the Commonwealth's inquiry into prospective jurors' CORI violates the Equal Protection Clause.**

Appellant is not entitled to relief on his claim that the Commonwealth's inquiry into prospective jurors' CORI violates the Equal Protection Clause.

### 1.    The Equal Protection Clause.

It is axiomatic that "[e]qual justice under law requires a criminal trial free of racial discrimination in the jury selection process." *Flowers v. Mississippi*, 588 U.S. 284, 301 (2019). *See also Miller-El v. Dretke*, 545 U.S. 231, 238 (2005). "The State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." *Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (citation omitted). "The Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Foster v. Chatman*, 578 U.S. 488, 489 (2016) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008)).

Consistent with those principles, *Batson* established a three-step process for evaluating peremptory challenges:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial

28

court must determine whether the defendant has shown purposeful discrimination.

*Miller-El I*, 537 U.S. at 328-329 (citing *Batson*, 476 U.S. at 96-97).

> **2.    There is no clearly established law applicable to appellant's claim.**

As noted, in addressing appellant's claim concerning the CORI checks of the prospective jurors, the MAC applied the test to determine whether a venire has been drawn from a fair cross-section of the community rather than the *Batson* test described immediately above.[8] In applying that test, the MAC did not overlook appellant's allegation that the Commonwealth's practice has a disparate impact on people of color. *Jackson v. Marshall*, 864 F.3d 1, 9 (1st Cir. 2017) (merits adjudication found, even where state court applied different standard). It simply applied a different standard. As the district court correctly recognized, *Batson* and its progeny address peremptory challenges, not background checks of prospective jurors that are at least initially antecedent to (and separate from) the exercise of a peremptory strike. Doc.No.23 at 16-17.[9] Appellant has not cited to any Supreme Court case in which the Court has applied *Batson* in this context. Thus, the MAC was not required to apply *Batson* here. *Bebo v. Medeiros*, 906 F.3d 129, 138 (1st Cir. 2018) ("If a habeas court must extend a rationale before it can apply to the

---

[8] The fair-cross-section test is discussed in more detail *infra*.

[9] Appellant's equal-protection claim premised on the prosecutor's use of peremptory challenges against two jurors will be discussed separately, below.

facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.") (quotations omitted).

### 3. Even if *Batson* applies here, the MAC reasonably denied relief.

Appellant deems the practice of running CORI inquiries unconstitutional because he alleges it results in the exclusion of more African-Americans from juries. A.Br.36-38. Even if the MAC was required to apply *Batson* to evaluate that claim, which it was not, it still did not unreasonably or even incorrectly reject it.

An "[o]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Hernandez v. New York*, 500 U.S. 352, 359-360 (1991) (addressing *Batson* claim). Demonstrating "discriminatory purpose[,]" requires more than showing that an official is aware of the "consequences" of his act(s). *Id*. at 360. Instead, it must be shown that the official took a particular course of action, "at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Id*. (citation omitted).

There is nothing inherently discriminatory in running CORI checks which furthers the state's legitimate interest in ensuring a fair and impartial jury. *See id*. at 362 ("[u]nless the government actor adopted a criterion with the intent to cause the impact asserted, that impact itself does not violate the principle of race

neutrality"). Importantly, the Commonwealth checked the criminal records of all prospective jurors who were provisionally seated on the jury, regardless of race. *See* Ex.1 at 82-83;Ex.2 at 219-220;Ex.3 at 4-5,125-126,129.

Appellant also claims that the Commonwealth artificially checks CORI to create a race-neutral reason for challenging an otherwise qualified African-American venireperson. A.Br.37-38. But this claim is belied by the record, which shows that the prosecutor only used peremptory challenges against the two jurors who had more serious criminal charges on their record. R.904. *Cf. Black v. Workman*, 682 F.3d 880, 897 (10th Cir. 2012) (recognizing that "[t]he significance of a failure to disclose a prior conviction may depend on the nature of the offense and how long ago it occurred"). The record does not demonstrate that CORI checks were subterfuge for race-based peremptory strikes. *Caldwell v. Maloney*, 159 F.3d 639, 654 (1st Cir. 1998) ("inadequacies in the record which preclude a determination of whether facts exist to support the prosecutor's reasoning works to [the defendant's] disadvantage"). The MAC's rejection of appellant's claim was, thus, consistent with *Hernandez* and should not be disturbed.

### C. The MAC reasonably and correctly rejected appellant's claim that the CORI inquiries violated the Sixth Amendment.

To the extent appellant's claim was grounded in the Sixth Amendment, the MAC reasonably and correctly rejected it.

### 1.    The Sixth Amendment.

"[T]he American concept of the jury trial contemplates a jury drawn from a fair cross-section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). The fair-cross-section requirement requires that "jury wheels, pools of names, panels, or venires from which juries are drawn . . . not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id*.

In *Duren v. Mississippi*, the Supreme Court set forth the following three-part test appellant must meet to establish a prima facie violation of the Sixth Amendment:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. at 364.

### 2.    Appellant failed to identify any clearly established federal law that applies to his claim.

As with his equal protection claim, and as explained in more detail below, appellant has failed to cite any clearly established Supreme Court holdings that squarely address his Sixth Amendment challenge to the CORI inquiries. *See* A.Br.38-40. His failure to identify applicable, clearly established law is fatal to his

32

claim for purposes of federal habeas review. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2006).

In his brief, appellant cites *Thiel v. S.Pac. Co.*, 328 U.S. 217, 220 (1946) and *Ballard v. United States*, 329 U.S. 187, 193-194 (1946). *See* A.Br.40. Both are distinguishable and neither qualifies as clearly established federal law for his claim. A.18. Both dealt with the intentional and systematic exclusion of a particular group of the community from the jury pool. *See Ballard*, 329 U.S. at 192; *Thiel*, 328 U.S. at 220. Appellant does not challenge the makeup of the jury pool. Nor does appellant appear to allege that the CORI inquires resulted in the intentional and systematic exclusion of a distinctive group from the jury pool. His claim appears more limited.

Appellant also faults the MAC for analyzing his claim under *Duren*.[10] A.Br.39.R.902-903. But if *Duren* does not apply here, then that just further supports the contention that no clearly established law has been identified. Relief is unwarranted. *Bebo,* 906 F.3d at 138.

### 3.    Even if *Duren* governs here, the MAC did not unreasonably or incorrectly apply it.

In any event, there was nothing unreasonable in the MAC's application of *Duren* to appellant's claim. The MAC recognized that the first prong of the test

---

[10] Appellant overlooks that he did "not set forth the standard to be applied to his claim" to the MAC. R.902.

was met where "African-American jurors are a distinctive group in the community, and specifically that the two jurors who were ultimately excluded in this case as a result of the CORI inquiry were African-American." R.903. The MAC found appellant failed to carry his burden for the second prong because there was a lack of information concerning the racial composition of the community from which his venire was drawn and the number of African-American jurors in his venire or in past Suffolk County venires. *Id*. The MAC's rejection of appellant's claim that he was denied a jury of his peers on this basis was consistent with *Duren*. Appellant is not entitled to habeas relief on this ground.

### D.     The MAC reasonably and correctly rejected appellant's claim that the peremptory strikes against jurors no. 47 and 122 violated the Equal Protection Clause.

Appellant contends that he adequately satisfied step one of the *Batson* test by filing a motion in limine that raised a racial objection and preserving that objection when the prosecutor exercised peremptory challenges against jurors no. 47 and 122. A.Br.27-29. But the MAC found otherwise, noting that his objections to actual venirepersons during trial failed to argue that the prosecutor's challenges to those specific individuals were based on their race. R.905-910. As the district court correctly concluded, in any event, "the [MAC's] decision that [appellant] did not establish a prima facie case of discriminatory intent was not contrary to or an unreasonable application of clearly established federal law." Doc.No.23 at 24.

34

**1. Appellant failed to offer a precise enough objection to alert the trial judge to the fact that he was lodging a *Batson* objection and the available information in record did not support an inference of discrimination in the prosecutor's strikes.**

To succeed on a *Batson* claim, appellant must first make a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. *Foster*, 578 U.S. at 499-500. The trial judge concluded, and the MAC agreed, that he failed to object on this basis. While appellant objected to the prosecutor's use of peremptory challenges against jurors no. 47 and no. 122, he did not object specifically on *Batson* grounds in either instance.[11] R.907-908.Ex.2 at 222-225;Ex.3 at 90-94. Instead, for all that appears, he was renewing his objection to the prosecutor's use of CORI checks of venirepersons. That focus undercuts any suggestion that he made the required showing at *Batson*'s first step.

In the absence of more, the MAC weighed the fact that the peremptory challenges "appeared to be made for obvious reasons that did not raise any

---

[11] When appellant objected to the prosecutor's peremptory strike of juror no. 47, he said nothing about race and only noted, as he had in his motion in limine, that he was opposed to a CORI inquiry of venirepersons. Ex.2 at 226. As to his objection to the prosecutor's peremptory strike of juror no. 122, although appellant did mention race, it was only in the context of the CORI inquiry "lead[ing] to" the exclusion of African-American jurors. Ex.3 at 94. Appellant never argued that the prosecutor was purposefully excusing jurors on the basis of race and specifically noted that he was "not blaming" the prosecutor. Ex.3 at 94.

35

inference of bias."[12] R.908,909. *See Sanchez*, 753 F.3d at 302 (presence of "apparent non-discriminatory reasons for striking potential jurors based on their voir dire answers" is a proper factor to consider). After the initial voir dire process, jurors no. 47 and 122 were seated on the jury and the prosecutor expressed contentment with each. Ex.2 at 131,300. It was only after the CORI check revealed both had criminal charges that had not been disclosed that the prosecutor employed the peremptory challenges. Ex.2 at 225;Ex.3 at 93. Failing to faithfully disclose criminal history is an adequate race-neutral reason for exercising a peremptory strike. Doc.No.23 at 20. *See, e.g., Fields* v. *Thaler*, 588 F.3d 270, 277 (5th Cir. 2009) (juror's failure to disclose his conviction for driving while under the influence was a race-neutral reason to strike the juror). The fact that a prospective juror has a criminal record is also a racially neutral reason for using a peremptory challenge. *See, e.g., United States v. Forrest*, 402 F.3d 678, 687 (6th Cir. 2005) (holding that a record of criminal charges and a negative reaction to being called as a juror are adequate race-neutral reasons to excuse a juror); *United States v.*

---

[12] As to juror no. 47, the MAC found that there was no *Batson* objection raised by appellant, and the trial judge did not commit error under state-law in failing to raise one *sua sponte* "where the challenge was in direct response to the juror failing to disclose her criminal record." R.908. And, as to juror no. 122, the MAC found that even assuming appellant had objected on *Batson* grounds, the totality of the circumstances did not give rise to an inference of a discriminatory purpose where the prosecutor initially expressed contentment with juror no. 122, and only decided to strike him after the CORI inquiry revealed that he failed to disclose his criminal history. R.909.

*Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007) (holding that a prospective juror's criminal record is a proper race-neutral reason for excusing him).

Further, "there were, in total five African-American jurors seated on the sixteen-person jury." R.909.Ex. 3 at 177-178. The make-up of the seated jury is relevant to the reviewing court's inquiry into whether appellant has made his prima facie showing. R.909. *See Scott v. Gelb*, 810 F.3d 94, 101 (1st Cir. 2016). And as the district court recognized, the record showed that "all six jurors who failed faithfully to disclose their criminal history were Black, and that two of them were excused by the Commonwealth." Doc.No.23 at 22.

The trial court did not engage in a full *Batson* analysis because appellant failed to raise the proper objection and his limited objection on another topic did not create the necessary inference of discrimination needed to satisfy *Batson*'s first step against the available evidence in the record.

> ### 2. The substantial gaps in the record support the MAC's conclusion that appellant did not establish a prima facie case under *Batson*.

Appellant did not supply adequate information to raise an inference that the strikes were employed with discriminatory intent. *Cf. Caldwell*, 159 F.3d at 654. Indeed, there is scant information contained in the state-court record from which the MAC could have gleaned a discriminatory intent behind the prosecutor's peremptory strikes. *See*, *e.g.*, *Scott*, 810 F.3d at 102-103 (SJC did not act

unreasonably in affirming trial judge's finding that Scott failed to raise prima facie case of discrimination where he did not provide sufficient information).

For example, there is no demographic information in the record about the composition of the venire or the use and nature of the prosecutor's strikes overall. *See Scott*, 810 F.3d at 101 (relevant factors for reviewing court to consider: "the number of strikes involved in the objected-to conduct; the nature of the prosecutor's other strikes; and, as the 'capstone,' the presence of an alternative, race-neutral explanation for the strike" (citation omitted)). While the record shows the other jurors that the prosecutor challenged, there is no information as to the race of these jurors. Thus, the MAC could not engage in a comparison between the jurors who were struck and any similarly situated jurors of a different race who were not. *See Flowers*, 588 U.S. at 302 (discriminatory intent could be shown by "side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case").

Because of the deficient record, the MAC also could not analyze the prosecutor's general questioning during voir dire to determine whether he engaged in disparate questioning of African-American venirepersons. *See Flowers*, 588 U.S. at 302. Specifically, appellant faults the MAC for not viewing the prosecutor's questioning of juror no. 47 as evidence that he was "attempting to find a race-neutral reason to exclude her before her criminal record was returned."

A.Br.34-35. But there is no information about the prospective jurors' races, other than the six whose CORI checks revealed criminal histories. Without such information, it is impossible to conduct a fair comparison to discern whether the prosecutor's questioning of juror no. 47 before the results of the CORI check differed in kind from his questioning of jurors of other races. *See, e.g., Miller-El II*, 545 U.S. at 260-263 (strikes based on African-American jurors' ambivalence towards the death penalty was pretextual because disparate questioning of jurors based on race led to the potentially false appearance of divergent views).

Additionally, the state-court record does not support appellant's claim that the questioning of juror no. 47 was out of the ordinary. *See Batson*, 476 U.S. at 97 ("the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose"). *Contrast Flowers*, 588 U.S. at 310 ("prosecutor's dramatically disparate questioning . . . can supply a clue that the prosecutor may have been seeking to paper the record and disguise a discriminatory intent"). During individual voir dire, the judge allowed the attorneys to "ask reasonable follow-up questions" regarding anything they saw, heard, or read about the juror in the questionnaire or during the general voir dire process. Ex.1 at 195,204-205. The prosecutor focused his questions on where jurors were from, employment and educational history, experiences with the law indicated on their questionnaire, and potential childcare

concerns. *See*, *e.g.*, Ex.2 at 82-83,88,91,104-105,120-121,133-134,138-139,159-161,171-172,179-180,185-187,200-201,206-208,212-214,245-247,257-258,280-281,287,296-299,309;Ex.3 at 37,43-44,50-51,58-60,67-68,73-74,83-85,87,97,101-102,111-112,116,119-121. The prosecutor's questioning of juror no. 47 regarding some of these topics was not significantly lengthier, different in kind, or more probing, than the questioning of others.[13] *Compare* Ex.2 at 129-130 with 159-161,257-258. *Contrast Miller-El I*, 537 U.S. at 344-345.

The only fact tending to support an inference of discriminatory intent was that appellant is African-American and the prosecutor peremptorily struck two African-American prospective jurors. But this fact alone is not sufficient to create a prima facie showing of discriminatory intent on the record presented here. *Cf. United States* v. *Girouard*, 521 F.3d 110, 116 (1st Cir.2008).

The MAC reasonably concluded that appellant failed to meet his threshold burden under *Batson*. *See*, *e.g.*, *Scott*, 810 F.3d at 102 (SJC's affirmance of trial court's ruling that no inference of discrimination had been raised was reasonable where SJC considered "'all of the circumstances bearing on potential racial

---

[13] Appellant claims that the prosecutor's lengthy questioning of jurors no. 60 and 108, revealed that he was attempting to find pretextual reasons to challenge African-Americans. But the record does not clearly demonstrate that jurors no. 60 and 108 are African-American. Regardless, the prosecutor's questioning of these jurors was not significantly lengthier nor different from his questioning of other jurors. A.Br.35.Ex.2 at 152-154,269-272,275-276.

discrimination,' about which it had information" (internal citation omitted));

*United States v. Simmons*, 122 F.4th 1256, 1265 (11th Cir. 2024) (affirming denial

of defendant's *Batson* challenge where defendant's argument that government used

majority of its peremptory strikes on black jurors even though they were a small

minority of the venire was not supported by the record and, although the defendant

failed to offer a prima facie case of a *Batson* violation, the government offered

nondiscriminatory reasons for exercising the challenged strikes, which were not

called into question by anything in the record). Appellant is not entitled to habeas

corpus relief.

## III.    APPELLANT IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT HIS STATEMENTS TO THE POLICE WERE INVOLUNTARY.

Appellant claims that a police detective employed impermissible

interrogation tactics, which rendered his statements involuntary in violation of the

Fifth and Fourteenth Amendments. A.Br.40-43. The MAC reasonably and

correctly rejected this claim. R.918-922.

### A.    Background.

Prior to trial, appellant moved to suppress statements he made during an

interview with two Boston Police homicide detectives on May 10, 2012, claiming

that the statements were not voluntary. R.21-28. After a hearing, the trial court

denied relief. R.176-184.

On appeal, the MAC affirmed the denial of relief, concluding that appellant's "will was not overborne by the improper statements made by the detective." S.A.69-75.R.918-922.

**B.    Clearly established law.**

A criminal defendant's statement may be admissible if it is "made freely, voluntarily and without compulsion or inducement of any sort." *Haynes v. Washington*, 373 U.S. 503, 513 (1963) (quotation omitted). In assessing voluntariness, a reviewing court must assess the totality of the circumstances. *See Arizona v. Fulminante*, 499 U.S. 279, 285 (1991). This includes "both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434 (2000). *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The age, intelligence, education level, and mental state of the accused are relevant, *Fulminante*, 499 U.S. at 285; *Schneckloth*, 412 U.S. at 226, as are the length and nature of police questioning, any promises or threats made, the length of detention, and any deprivation of essentials imposed upon the suspect, *Schneckloth*, 412 U.S. at 226. If the totality of the circumstances indicates that coercive police activity caused a defendant's will to be overborne, then any statements he made as a result must be deemed involuntary. *See Dickerson*, 530 U.S. at 434

"[T]he voluntariness inquiry is a mixed question of law and fact, and it is one that is understood as allowing sound jurisprudential judgment within fairly wide margins." *Cooper v. Bergeron*, 778 F.3d 294, 306 (1st Cir. 2015). Additionally, under § 2254(d), a state court's resolution of the voluntariness inquiry is afforded considerable leeway on habeas corpus review. *Id.*

### C.  The MAC reasonably and correctly denied relief.

Appellant argues that the MAC's rejection of his voluntariness claim runs contrary to *Miranda v. Arizona*, 384 U.S. 436 (1966), which recognizes that "[t]he privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination [and] . . . no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.'" *See* A.Br.40-41 (quoting *Miranda*, 384 U.S. at 476-477). But the MAC did not hinge its voluntariness determination solely on the nature of appellant's statements. Rather, the court correctly reviewed the totality of the circumstances to determine whether appellant's will was overborne. R.918-922. There was no contrary-to violation.

Further, the MAC reasonably and correctly applied the Supreme Court's holdings. It recognized that, although a detective employed improper tactics, they were unsuccessful in eliciting a confession. R.921-922. The fact that appellant consistently denied that he was involved in the murder, despite the officer's tactics,

43

showed that appellant's will was not overborne. *Id*. Such a finding is consistent with *Colorado v. Connelly*, 479 U.S. 157, 164 (1986) ("[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"). Indeed, whether the detective's improper tactics overtook appellant's will and coerced him into speaking was the key question involved in the MAC's voluntariness analysis. *See United States v. Hughes*, 640 F.3d 428, 439 (1st Cir. 2011) (noting that the key question involved in voluntariness analysis was "whether the troopers' actions, viewed objectively, coerced the defendant into speaking").

In reaching its conclusion, the MAC properly accounted for appellant's youth, noting that he was an 18-year-old high-school student at the time of the interview. R.921. *See Schneckloth*, 412 U.S. at 226. Despite his young age, the MAC found that appellant remained calm and his "limited, carefully chosen responses" to the questioning showed that he was not "at the mercy of the interrogating officers." R.922. *See United States v. Jacques*, 744 F.3d 804, 809 (1st Cir. 2014) ("A defendant's calm demeanor and the lucidity of his statements weigh in favor of finding his confession voluntary").

That appellant did not provide any incriminating statements in response to the detective's improper tactics was an indication that the statements appellant did provide were made freely and voluntarily rather than as the result of coercive

police activity. *See*, *e.g.*, *id.* at 811 (threats of a harsher sentence are relevant to determine voluntariness, but did not render statements involuntary where the threats did not have any meaningful impact on the defendant during the interrogation). Appellant's responses before the detective's improper tactics, and after, remained constant. *See*, *e.g.*, R.64-65,66,69,77-78,86,88,93-95,109-112,114-115,119,126. As the MAC found, "[t]hroughout the interview . . . the [appellant] never wavered in denying his involvement in the murder." R.921-922. It was reasonable for the MAC to conclude that the detective's improper tactics were unsuccessful in eliciting a confession or a statement that was not made on appellant's own volition. R.922.

Where the MAC considered the totality of the circumstances and reasonably determined that, despite the detective's improper tactics, appellant's will was not overborne during the interview, its rejection of appellant's voluntariness claim did not run afoul of any clearly established law. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (while misrepresentation by police during interrogation is relevant to voluntariness analysis, it is not dispositive; "[t]hese cases must be decided by viewing the 'totality of the circumstances'" (citation omitted)). Appellant is not entitled to habeas relief on this ground.

**IV.  APPELLANT IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT THE SEARCH OF HIS CELL PHONE IN A PRIOR CRIMINAL CASE VIOLATED HIS FOURTH AND FOURTEENTH AMENDMENT RIGHTS.**

Appellant claims that a search of his cell phone, which was conducted in connection with a prior criminal case, violated the Fourth and Fourteenth Amendments to the United States Constitution. A.Br.43-47.  The MAC rejected this claim on an adequate and independent state-law ground – collateral estoppel. R.912-914. Thus, this Court is barred from reviewing the claim here. Even putting that point aside, federal habeas corpus review of the Fourth Amendment aspect of this claim is precluded under *Stone* v. *Powell*, 428 U.S. 465 (1976).

**A.    Background.**

Before trial, the Commonwealth moved in limine to admit photographs of firearms that were seized from appellant's cell phone during a forensic examination that was conducted pursuant to a search warrant and incident to appellant's arrest on an unrelated shooting incident on December 2, 2011. S.A.256-257, 342. Appellant was at that time indicted on charges of assault and battery with a dangerous weapon and carrying a firearm without a license. S.A.335-336.

In that prior case, appellant sought to suppress any evidence discovered on his phone, arguing that the affidavit upon which the relevant search warrant was

based lacked the requisite probable cause.[14] S.A.340,343-344. Appellant's motion to suppress was denied and he pled guilty to both charges. S.A.339,346-348.

In a motion in limine filed prior to his murder trial in the case at issue here, appellant again sought to exclude photographs seized during the search of his cell phone conducted in the prior case. R.158-169. He argued that there was no probable cause to justify the search. R.164-169.Ex.1 at 167-175. The trial judge denied appellant's motion and allowed the Commonwealth to introduce photographs at trial. Ex.1 at 174-175. When appellant challenged this ruling on appeal, the MAC found appellant's claim was barred by collateral estoppel. R.912-914.

### B.     The MAC's reliance on an adequate and independent state-law ground to reject appellant's claim bars federal habeas review.

Where the state court has resolved a federal claim on a state-law ground that "is independent of the federal question and adequate to support the judgment[,]" federal habeas review is precluded. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "This rule applies whether the state law ground is substantive or procedural." *Id*. The application of the adequate-and-independent-state-ground rule "is grounded in concerns of comity and federalism." *Id.* at 730. It ensures that the state courts have the first opportunity to address any federal claims. *See id.* at 732.

---

[14] The forensic analysis uncovered several photographs depicting a firearm. S.A.346-347.

47

A state rule may serve as an independent and adequate state ground that precludes federal habeas relief "so long as the state regularly follows the rule and has not waived it by relying on some other ground." *Jewett v. Brady*, 634 F.3d 67, 76 (1st Cir. 2011). *See Coleman*, 501 U.S. at 730.

The doctrine of collateral estoppel and its application to preclude re-litigation of a suppression motion is firmly established in Massachusetts jurisprudence and regularly followed by its courts. *See Commonwealth v. Williams*, 431 Mass. 71, 74, 725 N.E.2d 217, 220 (2000) (recognizing that principles of issue preclusion have application to criminal cases). *See*, *e.g.*, *Commonwealth* v. *Cabrera*, 449 Mass. 825, 829, 874 N.E.2d 654, 658 (2007) (applying the doctrine of collateral estoppel in the context of suppression motion); *Commonwealth* v. *Ringuette*, 60 Mass.App.Ct. 351, 356-357, 801 N.E.2d 813, 818 (2004) (same). And the MAC expressly resolved appellant's claim on that basis. R.912-914. After finding that the requirements of collateral estoppel had been met, the MAC determined appellant was precluded from re-litigating the validity of the search warrant. R.914.

Here, appellant challenges the MAC's application of the state's collateral estoppel test. *See* A.Br.43-47. But this Court cannot upset the MAC's decision, even if it disagrees with its application of state law. *Coleman*, 501 U.S. at 729. (federal court "has no power to review a state law determination that is sufficient

to support the judgment. . . "); *Francis v. Miller*, 557 F.3d 894, 898 (8th Cir. 2009)

("'federal courts do not sit to correct a state court's application of its ordinarily

adequate procedural rules, except in unusual circumstances'") (quoting *Clemons v.*

*Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004). This Court's review is limited to

whether the MAC applied the state's collateral estoppel doctrine exorbitantly. *See*

*Lee v. Kemna*, 534 U.S. 362, 376 (2002) (in exceptional cases where state court has

applied a sound rule exorbitantly, the state ground is inadequate to preclude habeas

review).

Appellant has not made the requisite showing of exorbitant application. Nor

has he shown that the MAC's application of collateral estoppel was even flawed.

The MAC correctly identified the five requirements to trigger the application of

collateral estoppel and reasonably concluded that appellant was estopped from

relitigating the validity of the search warrant. R.913-914. *See*, *e.g.*, *Cabrera v.*

*Clarke*, Civil Action No. 08-10531-RWZ, 2010 WL 1529474 at *3 (D. Mass.

2010) (unpublished) (determining that there was nothing unreasonable in state

court's holding that collateral estoppel barred petitioner's motion to suppress

where suppression issues were identical in both state proceedings, the issues were

decided on the merits, and a final judgment was entered in the earlier prosecution).

Indeed, the MAC's application was consistent with how the state courts have

applied the doctrine in other cases. *See*, *e.g.*, *Cabrera*, 449 Mass. at 830, 874

49

N.E.2d at 658. While appellant disagrees with the MAC's application of some

factors, this is insufficient to show an "exorbitant" application. *See* A.Br. 44-47.

*See*, *e.g.*, *Downs v. Lape*, 657 F.3d 97, 107 (2d Cir. 2011) ("[e]ven if we agreed

with the dissent that its characterization of counsel's statement was 'more likely,'

the existence of a plausible contrary view leads us to conclude that the application

of the rule is not exorbitant"). Because appellant has not shown that the MAC's

application of collateral estoppel was "exorbitant" or even wrong, this Court

should decline to grant relief. *See Hodge v. Mendonsa*, 739 F.3d 34, 44-45 (1st Cir.

2013) (declining to upset MAC's procedural default holding where its conclusion

regarding waiver was reasonable and there was no showing that application of the

procedural bar was even close to being "exorbitant").

    **C.**    **Pursuant to *Stone* v. *Powell*, this Court is precluded from reviewing appellant's Fourth Amendment claim.**

    In *Stone v. Powell*, the Supreme Court held that "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, a

state prisoner may not be granted federal habeas corpus relief on the ground that

evidence obtained in an unconstitutional search or seizure was introduced at his

trial." 428 U.S. 494-495. "*Stone* thus stands for the proposition that a federal

habeas court ordinarily cannot revisit a state court's disposition of a prisoner's

Fourth Amendment claim." *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001). This

rule is premised on the recognition that the exclusionary rule is not a "personal

constitutional right"; in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Stone*, 428 U.S. at 494-495.

Appellant may bypass *Stone* only by showing that he was not afforded a "realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." *Sanna*, 265 F.3d at 8. "'[A] full and fair opportunity' to litigate means that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations." *Id*. While a federal habeas court may investigate the "adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims," its inquiry generally ends once it determines that those procedures are sufficient. *Id*. "So long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of [a full and fair] set of procedures, a federal habeas court lacks the authority, under *Stone,* to second-guess the accuracy of the state court's resolution of those claims." *Id*.

Appellant does not argue that the set of procedures that are generally in place in Massachusetts for the litigation of Fourth Amendment claims is inadequate. Nor could he, where this Court has already recognized that Massachusetts' typical procedures pass muster in this context. *See Sanna*, 265 F.3d

at 8-9 (there could hardly be "a more thorough set of procedures for the litigation of a Fourth Amendment claim" than the ones employed by Massachusetts). Instead, he argues that he was deprived of his opportunity to fully and fairly litigate his claim because the MAC held that he was collaterally estopped from re-litigating the issue. A.Br.43-44. But this ignores the fact that appellant had an opportunity to fully and fairly litigate the very same claim in the prior state criminal case. The MAC's decision merely foreclosed him from re-litigating it. Appellant has provided no support for his contention that *Stone* does not apply to preclude federal habeas review in these circumstances. *See id*.

By filing a motion to suppress in the prior case, appellant challenged the validity of the search warrant and the constitutionality of the search of his cell phone, on Fourth Amendment grounds, in Massachusetts state courts. That motion to suppress was denied by the state trial court. Then, appellant chose to waive his appellate rights as to that denial by pleading guilty to the charges he was then facing. That the Massachusetts appellate courts did not review the state trial court's decision on the suppression issue is of no consequence. The procedure to do so was in place, and appellant chose to forego that option by entering a guilty plea. *See United States Ex. Rel. Maxey* v. *Morris*, 591 F.2d. 386, 388-389 (7th Cir. 1979) (recognizing that *Stone* requires only an opportunity to litigate the Fourth Amendment claim in state courts and that defendant's failure to avail himself of

that opportunity does not entitle him to habeas corpus relief). In these circumstances, appellant has not shown that he was denied a "realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." *Sanna*, 265 F.3d at 8. Thus, this Court is precluded from reviewing appellant's Fourth Amendment claim on its merits.

## V.    APPELLANT IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT INTRODUCTION OF PRIOR-BAD-ACT EVIDENCE VIOLATED HIS FEDERAL DUE PROCESS RIGHTS.

At trial, over appellant's objection, the Commonwealth introduced (1) two photographs from appellant's phone depicting him holding a silver revolver with a black handle and (2) testimony from appellant's friend, Thomas Washington, regarding his observation of appellant in possession of a silver revolver with a black handle several months before the homicide. R.910. Appellant contends that the prosecutor, in closing argument, impermissibly used this evidence for propensity purposes in violation of his federal due process rights. A.Br.47-48. According to appellant, the MAC ignored this argument. *Id*. Thus, he asks this Court to review the claim *de novo*. A.Br.48.

But the MAC did not ignore appellant's due process claim. Rather, it addressed it on the merits. *See* S.A.55-59,382-383. Thus, *de novo* review is not warranted. And where the MAC reasonably applied clearly established law to resolve the claim, appellant is not entitled to habeas relief.

### A.    The MAC rejected appellant's claim on its merits.

Before the MAC, appellant argued that evidence of his prior possession of firearms was unduly prejudicial and that such admission violated his due process and fair trial rights. S.A.55-59,382-383. In support of his claim that he was prejudiced, appellant cited to portions of the prosecutor's closing argument in which the prosecutor referenced the evidence of his prior possession of firearms. Ex.10 at 53-54,71.S.A.55-59,382-383. Although the MAC did not mention the prosecutor's closing argument in its decision, such an omission does not entitle appellant to *de novo* review of his federal due process claim. That the MAC did not expressly address one underlying factual aspect of a larger legal argument does not mean that it bypassed the federal due process issue entirely. Appellant cites no caselaw standing for such a proposition.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 101-102. The presumption applies even where "there is no explicit discussion of the articulated federal constitutional issue amidst the discussion of issues in the state court opinion . . . ." *Hodge*, 739 F.3d at 41. And it applies when a state court "assesses [an appellant's] claim but applies a legal standard other than the standard [appellant] suggests." *Jackson*, 864 F.3d at 9. The

presumption may be cast aside only when "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court . . . ." *See Johnson v. Williams*, 568 U.S. 289, 303 (2013).

In his state appeal, appellant argued that the admission of the firearms evidence violated state evidentiary rules, as well as his federal due process and fair trial rights. S.A.55-59,382-383,468-469. In rejecting his claim, the MAC focused on the state evidentiary issue and cited only state appellate cases. R.910-912. But in doing so, the MAC substantively addressed the relevant evidentiary challenge and determined that the introduction of the firearms evidence did not constitute prejudicial error. *See Hodge*, 739 F.3d at 41 ("where 'the state court's holding squarely addressed the merits' of overlapping state and federal claims, 'it would elevate form over substance to impose some sort of requirement that busy state judges provide case citations to federal law . . . before federal courts will give deference to state court reasoning'" (citation omitted)). Thus, appellant is not entitled to *de novo* review of his claim.[15]

### B.    Clearly established law.

"A misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief." *Coningford v.*

---

[15] However, even if this Court reviews the claim *de novo*, relief would still be inappropriate for the reasons stated herein.

*Rhode Island*, 640 F.3d 478, 484 (1st Cir. 2011) (citing *Montana v. Egelhoff*, 518

U.S. 37, 43 (1996)). The Supreme Court "'has defined the category of errors that

violate 'fundamental fairness' very narrowly.'" *Gomes v. Silva*, 958 F.3d 12, 23

(1st Cir. 2020) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Thus, a violation of state law alone "is not a denial of due process." *See Engle v.*

*Isaac*, 456 U.S. 107, 121, n.21 (1982). Rather, "[t]o be a constitutional violation, a

state evidentiary error must so infuse the trial with inflammatory prejudice that it

renders a fair trial impossible." *Lyons v. Brady*, 666 F.3d 51, 56 (1st Cir. 2012).

*See also Andrew v. White*, 145 S.Ct. 75, 83 (2025) ("the Due Process Clause

forbids the introduction of evidence so unduly prejudicial as to render a criminal

trial fundamentally unfair").

    **C.**    **The MAC reasonably and correctly rejected appellant's federal due process claim.**

As the MAC noted, the Commonwealth admitted the challenged evidence to

show that appellant had access to revolvers four months prior to the homicide.

R.911-912. This was relevant because there was also testimony explaining that of

the possible seventeen firearms that could have been the murder weapon, fifteen of

those were revolvers. *Id*. Ex.7 at 221-22. Other courts have upheld the admission

of this type of evidence in similar circumstances. *See*, *e.g.*, *United States v. Bell*,

795 F.3d 88, 99-100 (D.C. Cir. 2015) (evidence describing defendant's

participation in a prior shooting admissible to show use of and familiarity with

firearms); *United States v. Zappola*, 677 F.2d 264, 270 (2d Cir. 1982) (witness's observation of handgun at defendant's house six months before defendant fired handgun in witness's presence admissible as probative of defendant's access to such a weapon). *Cf. Linton*, 812 F.3d at 126 ("That this Court and other circuits have used language and analysis in line with that used by the SJC adds further force to the conclusion that the SJC's formulation is not one with which 'fairminded jurists' could not agree.").

The admission of this relevant evidence did not cause appellant undue prejudice. Prior to trial, the judge carefully weighed the probative value of the evidence against its prejudicial effect. In undertaking this balancing test, she limited what the jury heard and saw to only what was necessary to demonstrate that appellant had access to, or prior familiarity with, revolvers. Ex.1 at 72-73;Ex.3 at 139-140,142,144-145;Ex.4 at 228-231;Ex.7 at 265-267. The trial judge's rulings lessened the inflammatory effect of the evidence that was admitted.

The judge also gave a careful limiting instruction, telling the jury that they were only to consider appellant's prior possession of a firearm as some evidence that he had access to, or familiarity with, firearms. R.912.Ex.4 at 231. The jury is presumed to have followed the judge's instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

Moreover, the firearms-related evidence was not pervasive. Out of approximately twenty-two witnesses, only one referenced appellant's prior possession of a firearm. Out of approximately one hundred and fifty-nine exhibits, only two were the photographs depicting a firearm. The trial prosecutor did not mention either the testimony or photographs in his opening remarks. *See* Ex.3 at 179-193.

In closing, the prosecutor mentioned the evidence only briefly. *See* Ex.10 at 53-54,71,46-76. Appellant contends that the prosecutor used the evidence impermissibly by arguing that because appellant had previously possessed multiple firearms, the jury should infer he is someone who would shoot the victim. A.Br.48. Such an argument misconstrues the prosecutor's remarks. The prosecutor permissibly pointed out to the jury that it was not proven that the revolver described during testimony was the same revolver depicted in the photographs found on appellant's phone. He argued that the jury could infer that appellant had access to multiple revolvers. *See* Ex.10 at 53-54. Instead of an improper propensity argument, the prosecutor appropriately used the evidence to demonstrate that appellant had access to the type of firearm that, statistically speaking, was the mostly like to have been used to shoot the victim. This argument was consistent with the judge's limiting instruction, which informed the jury that they were only to consider the evidence as it related to appellant's access to, or familiarity with,

58

firearms. Where the firearms-related evidence was relevant and not unduly prejudicial, the trial court's admission of it was "well within the universe of plausible evidentiary rulings." *See Coningford*, 640 F.3d at 485. As such, the MAC's decision affirming admission of the evidence was not only reasonable but correct. *See Kater v. Maloney*, 459 F.3d 56, 64 (1st Cir. 2006). For the very same reasons why the MAC's determination was not unreasonable, any error in the admission of the evidence did not have a substantial and injurious effect on the verdict. *See Brown*, 596 U.S. at 133, 145. *Supra*, Argument Section I(B).

## VI. APPELLANT IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT A RESTRICTION ON CROSS-EXAMINATION OF A WITNESS VIOLATED HIS CONFRONTATION AND DUE PROCESS RIGHTS.

Appellant contends that the trial judge violated his Fifth, Sixth, and Fourteenth Amendment rights by completely restricting his ability to cross-examine Thomas Washington. A.Br.49-50. He also alleges the MAC's decision was based on an unreasonable determination facts. *Id*. Appellant is not entitled to relief because the record demonstrates that the MAC reasonably and correctly rejected this claim.

### A. Clearly established law.

Under the Confrontation and Due Process Clauses, a criminal defendant has a right to confront and cross-examine adverse witnesses. *See Davis v. Alaska*, 415 U.S. 308, 315 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). That

59

right, however, is not absolute. *Delaware v. Van Arsdall*, 475 U.S. 673, 679

(1986); *Chambers*, 410 U.S. at 295 (recognizing that right to confront and cross-

examine "may, in appropriate cases, bow to accommodate other legitimate

interests in the criminal trial process").

"Trial judges retain wide latitude . . . to impose reasonable limits on . . .

cross-examination based on concerns about, among other things, harassment,

prejudice, confusion of the issues, the witness' safety, or interrogation that is

repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. A limitation

on cross-examination will offend the Constitution only if it prevents the defense

from engaging in "otherwise appropriate cross-examination designed to show a

prototypical form of bias on the part of the witness, and thereby 'to expose to the

jury the facts from which jurors . . . could appropriately draw inferences relating to

the reliability of the witness.'" *Van Arsdall*, 475 U.S. at 680 (quoting *Davis*, 415

U.S. at 318).

> **B.     The MAC's rejection of appellant's claim was based on a reasonable determination of the facts and is supported by the record.**

Appellant claims that the trial judge completely restricted his cross-

examination of Washington by ruling that any questioning of him would open the

door to introduction of, and details relating to, his prior criminal conviction.

A.Br.49-50. This is not accurate.

The trial judge allowed the Commonwealth to introduce testimony from Washington that he observed appellant in possession of a silver revolver with a black handle approximately four months prior to the murder. Ex.1 at 72-73,78;Ex.3 at 139-140. She excluded any testimony pertaining to appellant's use of that firearm to commit a shooting. Ex.1 at 69-70. The trial judge warned defense counsel that if she sought on cross-examination to suggest Washington was lying about his observation of appellant with a firearm, that would be creating a false narrative and could open the door to introduction of appellant's prior conviction stemming from the shooting incident. R.923.Ex.1 at 76-77,78;Ex.4 at 224. Washington testified in conformance with the trial judge's ruling. Ex.4 at 228-230. Defense counsel chose to forego cross-examination. R.923.Ex.4 at 231.

On appeal, the MAC found that the judge's warning to defense counsel did not "wholly restrict" appellant's ability to cross-examine Washington. *Id*. The MAC also concluded the judge did not abuse her discretion in giving the warning. Appellant has not shown that the MAC's factual determination was unreasonable.

Nor can he, where it is fully supported by the state-court record. Prior to Washington's testimony, the trial judge issued the warnings to defense counsel. Ex.1 at 76-77,78;Ex.4 at 222-224. She noted, however, that she was not making any prejudgments. Ex.1 at 76-77. In their subsequent discussion immediately prior to Washington's testimony, the judge again stated that she could not prejudge what

counsel would do and that she would call counsel up to the bench if she perceived that the questioning was crossing the line. Ex.4 at 223. The judge's warnings were not meant to completely prohibit appellant's ability to cross-examine Washington. Rather, she merely provided a preview of what she would consider allowing into evidence if appellant pursued a particular line of questioning.

Appellant, in his brief, has merely reasserted the same arguments already made and rejected before the state courts. This is not sufficient to show that the state courts' finding was objectively unreasonable. *See Gaskins v. Duval*, 640 F.3d 443, 453 (1st Cir. 2011) (rejecting petitioner's claim that state court's factual findings were unreasonable where petitioner merely presented same evidence to habeas court that failed to convince state court).

### C.    The MAC reasonably and correctly rejected appellant's claim.

Nor was the MAC's rejection of appellant's claim contrary to or an unreasonable application of any clearly established law. Although the MAC cited to state law, it identified the constitutional right at issue and employed a standard identical to the federal one described *supra*. R.922-923. Indeed, the MAC recognized that while a criminal defendant has a right to cross-examine adverse witnesses, that right is not absolute and may be restricted by the trial judge for appropriate purposes. R.922. *Compare Van Arsdall*, 475 U.S. at 679. Where the

MAC employed the correct legal standard, its decision cannot be deemed contrary to clearly established law. *Ellen v. Brady*, 475 F.3d 5, 11 (1st Cir. 2007).

The MAC also reasonably applied clearly established law. As explained *supra*, the MAC correctly found that the trial judge did not wholly restrict appellant from cross-examining Washington. R.923. While her warning to appellant limited a potential line of questioning as to the veracity of Washington's testimony regarding seeing appellant with a gun, it was a reasonable limitation meant to prevent presenting a false narrative to the jury. *See Commonwealth v. Oliveira*, 74 Mass. App. Ct. 49, 53, 904 N.E.2d 442, 447 (2009) (Commonwealth entitled to rebut with evidence of prior convictions where defendant presents a false narrative). It did not foreclose appellant from inquiring into any potential bias or motive to testify. *See Bui v. DiPaolo*, 170 F.3d 232, 242 (1st Cir. 1999) (noting that "[t]he threshold requirement imposed by the Confrontation Clause is satisfied as long as the defendant is given a fair chance to inquire into a witness's bias"). The warning instead signaled what could happen if appellant were to pursue a line of questioning that would have fostered a narrative that he and the court knew to be false. Reasonable limitations on what can be pursued during cross-examination, meant to prevent confusion of the issues or prejudice to a party, are entirely permissible. *See Van Arsdall*, 475 U.S. at 679; *United States v. Twomey*, 806 F.2d 1136, 1139 (1st Cir. 1986) ("a trial judge retains wide latitude to impose

reasonable limits [on cross-examination] in order to avoid prejudice to a party or confusion of the issues"). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).

Where the trial judge did not completely foreclose cross-examination of Washington and her warning was based on a concern recognized by the Supreme Court as a permissible basis for limiting cross-examination, the MAC acted neither incorrectly nor unreasonably in determining that appellant's federal constitutional rights had not been violated. Moreover, for the same reasons, any error did not have a substantial and injurious effect on the verdict. *See Brown*, 596 U.S. at 133, 145. *Supra*, Argument Section I(B). Thus, appellant is not entitled to habeas corpus relief.

## VII. APPELLANT IS NOT ENTITLED TO RELIEF ON HIS CLAIM THAT INTRODUCTION OF IMPROPER IDENTIFICATION EVIDENCE VIOLATED HIS FEDERAL DUE PROCESS RIGHTS.

Appellant claims that the introduction of testimony from Sergeant Detective Daley violated his federal due process rights because it constituted improper lay opinion identification evidence. A.Br.51-52. The MAC reasonably and correctly rejected this claim. Thus, appellant is not entitled to habeas relief.

**A.    The MAC's decision was based on a reasonable determination of the facts.**

Appellant claims that Daley provided improper lay opinion identification evidence by testifying that he obtained the RMV photographs of several individuals, and appellant's photograph matched the description given by Parker. A.Br.51. He also claims that the detective improperly identified Mrs. Reddick's vehicle in surveillance footage. *Id*. But the MAC reasonably found that Daley did not make an identification of appellant based on a photograph, nor did he identify the suspect vehicle in surveillance footage. R.916-918. The state-court record fully supports the MAC's factual determinations.

As the MAC correctly found, the prosecutor never showed the detective a photograph of appellant to identify at trial. R.916. Rather, the detective testified that he obtained photographs of the six registered drivers of the vehicle at issue from a government database and only one of them fit the physical description provided by Parker; that person was appellant. Ex.8 at 96-97. A photograph was never entered into evidence. Nor was Daley asked to identify appellant from a photograph. As the MAC correctly found, the detective's testimony was instead explanatory as he described what steps were taken during the investigation that led police to focus on appellant as a suspect. R.917.

Appellant incorrectly asserts that Daley identified Mrs. Reddicks's vehicle from surveillance footage introduced into evidence at trial. A.Br.51. As the MAC

correctly noted, the detective never made such an identification. R.918. Rather, his testimony was limited to describing the steps he took in his investigation based on the partial license plate number and the description of the vehicle provided by Parker. *See* Ex.8 at 84-85,97-99,142,148. While he testified about his review of surveillance footage, including a video obtained from the MBTA, he never identified a vehicle appearing in the footage. Ex.8 at 139-141. Rather, he explained how his review helped him to focus on a particular timeframe for the investigation. Ex.8 at 140.

Appellant has not shown that the MAC's factual determinations were incorrect, let alone unreasonable. Thus, he is not entitled to habeas relief.

### B.    The MAC reasonably and correctly rejected appellant's federal due process claim.

Appellant argues that the MAC's decision allowing Daley's "identification" testimony to be introduced violated his federal due process rights. A.Br.52. He has not cited to any Supreme Court case that addresses directly whether the admission of lay opinion "identification" testimony, even if the challenged testimony could be viewed as such, offends the Due Process Clause. Nor has the respondent found one. The absence of any Supreme Court case that squarely addresses the constitutional claim raised by appellant is dispositive on habeas corpus review. *See Brown v Ruane*, 630 F.3d 62, 68 (1st Cir. 2011).

66

To the extent his claim is reviewable under § 2254, he must meet the exceptionally high burden of showing that the state court's evidentiary decision rendered his trial fundamentally unfair and that the state court unreasonably concluded otherwise. *See supra*, Argument Section V(B). Appellant cannot meet this high due process standard.

The MAC determined that Daley explained the steps the detectives took during their investigation and how those steps led them to focus on appellant as a suspect. R.917. As the MAC reasonably found, given that one aspect of the defense was attacking the nature and quality of the police's investigation, such testimony was relevant and permissible. R.917. The testimony also did not cause any undue prejudice to appellant. The trial judge made clear in a limiting instruction, given directly after Daley's testimony, that the testimony should not be construed as any identification by Parker. Ex.8 at 97. Rather, the judge explained to the jury that it "was offered for the limited purpose of helping [them to] understand what steps the police took in this investigation and why they took them, and for no other reason." *Id*. Any risk of a misapprehension by the jury as to the purpose of the detective's testimony was quelled by the judge's clear instruction. Moreover, this testimony did not pervade the trial. Instead, it accounted for a portion of one witness's testimony in a case where the Commonwealth presented approximately twenty-two

witnesses; and the prosecutor mentioned it only briefly in his lengthy closing argument. *See* Ex.10 at 63,46-76.

Because admission of the detective's testimony properly served a relevant purpose and, even so, was not unduly prejudicial, the MAC's rejection of appellant's due process claim was entirely reasonable. For the very same reasons why the MAC's determination was not unreasonable, any error did not have a substantial and injurious effect on the verdict. *See Brown*, 596 U.S. at 133, 145. *Supra*, Argument Section I(B).

## **CONCLUSION**

For the foregoing reasons, this Court should affirm.

Respectfully submitted,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

 */s/ Nicole Nixon*
Nicole Nixon 1st Cir. No. 1203874
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2852
Nicole.M.Nixon@mass.gov

Respectfully submitted,

ANDREA JOY CAMPBELL

ATTORNEY GENERAL

 */s/ Tara L. Johnston*
Tara L. Johnston 1st Cir. No. 1196249
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2677
Tara.Johnston@mass.gov

Date: July 24, 2025

## Certificate of Compliance With Rule 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,948 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), according to the Microsoft Word word-processing system used to prepare the brief.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Tara L. Johnston*
Tara L. Johnston
Counsel for Respondent-Appellee

## Certificate Of Service

I hereby certify that, on July 24, 2025, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that counsel for Petitioner, Rosemary C. Scapicchio, is registered as an ECF filer and that she will be served by the CM/ECF system.

Dated: 7/24/2025                     */s/ Tara L. Johnston*
                                     Tara L. Johnston

## **ADDENDUM**

28 U.S.C. § 1291 ...........................................................................................72

28 U.S.C. § 2241 ...........................................................................................72

28 U.S.C. § 2253 ...........................................................................................73

28 U.S.C. § 2254 ...........................................................................................74

M.G.L. c. 6, § 172 ........................................................................................76

Mass. R. App. P. 27.1 ..................................................................................83

## TITLE 28 OF THE UNITED STATES CODE

### SECTION 1291     Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

### SECTION 2241     Power to grant writ

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

(b) The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.

(c) The writ of habeas corpus shall not extend to a prisoner unless--

(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

(5) It is necessary to bring him into court to testify or for trial.

(d) Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district

court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

(e)(1) No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

(2) Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.


## SECTION 2253  Appeal

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

**SECTION 2254   State custody; remedies in Federal courts [Statutory Text & Notes of Decisions subdivisions I to XIV]**

<Notes of Decisions for 28 USCA § 2254 are displayed in multiple documents.>

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(f) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

(g) A copy of the official records of the State court, duly certified by the clerk of such court to be a true and correct copy of a finding, judicial opinion, or other reliable written indicia showing such a factual determination by the State court shall be admissible in the Federal court proceeding.

(h) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel for an applicant who is or becomes financially unable to afford counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

(i) The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.

## MASSACHUSETTS GENERAL LAWS

**CHAPTER 6**  **THE GOVERNOR, LIEUTENANT GOVERNOR AND COUNCIL, CERTAIN OFFICERS UNDER THE GOVERNOR AND COUNCIL, AND STATE LIBRARY**

**SECTION 172**  **Maintenance of criminal offender record information in electronic format; accessibility via world wide web; eligibility for access to database; use and dissemination of criminal offender record information**

(a) The department shall maintain criminal offender record information in a database, which shall exist in an electronic format and be accessible via the world wide web. Except as provided otherwise in this chapter, access to the database shall be limited as follows:

(1) Criminal justice agencies may obtain all criminal offender record information, including sealed records, for the actual performance of their criminal justice duties. Licensing authorities, as defined in section 121 of chapter 140, may obtain all criminal offender record information, including sealed records, for the purpose of firearms licensing in accordance with sections 121 to 131P, inclusive, of chapter 140. The criminal record review board may obtain all criminal offender record information, including sealed records, for the actual performance of its duties.

(2) A requestor authorized or required by statute, regulation or accreditation requirement to obtain criminal offender record information other than that available under clause (3) may obtain such information to the extent and for the purposes authorized to comply with said statute, regulation or accreditation requirement.

(3) A requestor or the requestor's legally designated representative may obtain criminal offender record information for any of the following purposes: (i) to evaluate current and prospective employees including full-time, part-time, contract, internship employees or volunteers; (ii) to evaluate applicants for rental or lease of housing; (iii) to evaluate volunteers for services; and (iv) to evaluate applicants for a professional or occupational license issued by a state or municipal entity. Criminal offender record information made available under this section shall be limited to the following: (i) felony convictions or findings of not guilty by reason of insanity for 10 years following the disposition thereof, including termination of any period of incarceration or custody, (ii) misdemeanor convictions for 5 years following the disposition thereof, including termination of any period of incarceration or custody, and (iii) pending criminal charges, which shall include cases that have been continued without a finding until such time as the case is

dismissed pursuant to section 18 of chapter 278; provided, however, that prior misdemeanor and felony conviction records shall be available for the entire period that the subject's last available conviction record is available under this section; and provided further, that a violation of section 7 of chapter 209A and a violation of section 9 of chapter 258E shall be treated as a felony for purposes of this section.

(4) Any member of the general public may upon written request to the department and in accordance with regulations established by the department obtain the following criminal offender record information on a subject: (i) convictions or findings of not guilty by reason of insanity for any felony punishable by a term of imprisonment of 5 years or more, for 10 years following the disposition thereof, including termination of any period of incarceration or custody; (ii) information indicating custody status and placement within the correction system for an individual who has been convicted of any offense and sentenced to any term of imprisonment, and at the time of the request: is serving a sentence of probation or incarceration, or is under the custody of the parole board; (iii) felony convictions or findings of not guilty by reason of insanity for 2 years following the disposition thereof, including any period of incarceration or custody; and (iv) misdemeanor convictions for 1 year following the disposition thereof, including any period of incarceration or custody.

(5) A subject who seeks to obtain his own criminal offender record information and the subject's legally designated representative may obtain all criminal offender record information from the department pertaining to the subject under section 175.

(6) The commissioner may provide access to criminal offender record information to persons other than those entitled to obtain access under this section, if the commissioner finds that such dissemination to such requestor serves the public interest. Upon such a finding, the commissioner shall also determine the extent of access to criminal offender record information necessary to sustain the public interest. The commissioner shall make an annual report to the governor and file a copy of the report with the state secretary, the attorney general, the clerk of the house of representatives and the clerk of the senate documenting all access provided under this paragraph, without inclusion of identifying data on a subject. The annual report shall be available to the public upon request.

(7) Housing authorities operating pursuant to chapter 121B may obtain from the department conviction and pending criminal offender record information for the sole purpose of evaluating applications for housing owned by such housing authority, in order to further the protection and well-being of tenants of such housing authorities.

(8) The department of telecommunications and cable and the department of public utilities may obtain from the department all available criminal offender record information for the purpose of screening applicants for motor bus driver certificates and applicants who regularly transport school age children or students under chapter 71B in the course of their job duties. The department of public telecommunications and cable and the department of public utilities shall not disseminate such information for any purpose other than to further the protection of children.

(9) The department of children and families and the department of youth services may obtain from the department data permitted under section 172B.

(10) A person providing services in a home or community-based setting for any elderly person or disabled person or who will have direct or indirect contact with such elderly or disabled person or access to such person's files may obtain from the department data permitted under section 172C.

(11) The IV-D agency as set forth in chapter 119A may obtain from the department data permitted under section 172D and section 14 of chapter 119A.

(12) A long-term care facility, as defined in section 72W of chapter 111, an assisted living residence as defined in section 1 of chapter 19D, and any continuing care facility as defined in section 1 of chapter 40D may obtain from the department data permitted under section 172E.

(13) The department of early education and care and adoption and foster placement agencies licensed by the department may obtain from the department data permitted under section 172F.

(14) Operators of camps for children may obtain from the department data permitted under section 172G.

(15) An entity or organization primarily engaged in providing activities or programs to children 18 years of age or younger that accepts volunteers may obtain from the department data permitted under section 172H.

(16) School committees or superintendents that have contracted with taxicab companies to provide for the transportation of pupils pursuant to section 7A of chapter 71 may obtain from the department data permitted under section 172*I*.

(17) The commissioner of banks may obtain from the department data permitted under section 172J, section 3 of chapter 255E and section 3 of chapter 255F.

(18) A children's camp or school that plans to employ a person or accept a volunteer for a climbing wall or challenge course program may obtain from the department data permitted under section 172K.

(19) A victim of a crime, a witness or a family member of a homicide victim, as defined in section 1 of chapter 258B, may obtain from the department data permitted under section 178A.

(20) The motor vehicle insurance merit rating board may obtain from the department data permitted under section 57A of chapter 6C.

(21) The department of early education and care, or its designee, may obtain from the department data permitted under sections 6 and 8 of chapter 15D.

(22) The district attorney may obtain from the department data permitted under section 2A of chapter 38.

(23) A school committee and superintendent of any city, town or regional school district and the principal, by whatever title the position be known, of a public or accredited private school of any city, town or regional school district, may obtain from the department data permitted under section 38R of chapter 71.

(24) The Massachusetts Port Authority may obtain from the department data permitted under section 61 of chapter 90.

(25) The department of children and families may obtain from the department data permitted under section 26A of chapter 119, section 3B of chapter 210.

(26) The state racing commission may obtain from the department data permitted under section 9A of chapter 128A.

(27) A court, office of jury commissioner, and the clerk of court or assistant clerk may obtain from the department data permitted under section 33 of chapter 234A.

(28) The pension fraud unit within the public employee retirement administration commission may obtain from the department data permitted under section 1 of chapter 338 of the acts of 1990.

(29) Special education school programs approved under chapter 71B may obtain from the department all criminal offender record information provided for in paragraph (3) of subsection (a).

(30) The department shall configure the database to allow for the exchange, dissemination, distribution and direct connection of the criminal record information system to criminal record information systems in other states and relevant federal agencies including the Federal Bureau of Investigation and Immigration and Customs Enforcement that utilize fingerprint or iris scanning and similar databases.

(31) Navigator organizations certified by the commonwealth health insurance connector authority under 42 U.S.C. § 18031(i) may obtain from the department data permitted under section 172L.

(31) A person licensed pursuant to section 122 of chapter 140 may obtain from the department data permitted under section 172L.

(32) A person licensed pursuant to section 122 of chapter 140 may obtain from the department data permitted under section 172M.

(33) The department of public utilities and its departments or divisions may obtain from the department all available criminal offender record information, as defined in section 167, to determine the suitability of an applicant to obtain a transportation

network driver certificate pursuant to chapter 159A ½. Information obtained pursuant to this section shall not be disseminated for any purpose other than to further public protection and safety.

(b) Notwithstanding the foregoing, convictions for murder, voluntary manslaughter, involuntary manslaughter, and sex offenses as defined in section 178C of chapter 6 that are punishable by a term of incarceration in state prison shall remain in the database permanently and shall be available to all requestors listed in paragraphs (1) through (3), inclusive, of subsection (a) unless sealed under section 100A of chapter 276.

(c) The department shall specify the information that a requestor shall provide to query the database, including, but not limited to, the subject's name, date of birth and the last 4 digits of the subject's social security number; provided, however, that a member of the public accessing information under paragraph (4) of subsection (a) shall not be required to provide the last four digits of the subject's social security number. To obtain criminal offender record information concerning a subject pursuant to subsection (a)(2) or (a)(3), the requestor must certify under the penalties of perjury that the requestor is an authorized designee of a qualifying entity, that the request is for a purpose authorized under subsection (a)(2) or (a)(3), and that the subject has signed an acknowledgement form authorizing the requestor to obtain the subject's criminal offender record information. The requestor must also certify that he has verified the identity of the subject by reviewing a form of government-issued identification. Each requestor shall maintain acknowledgement forms for a period of 1 year from the date the request is submitted. Such forms shall be subject to audit by the department. The department may establish rules or regulations imposing other requirements or affirmative obligations upon requestors as a condition of obtaining access to the database; provided, however, that such additional rules and regulations are not in conflict with the state and federal Fair Credit Reporting Acts.

In connection with any decision regarding employment, volunteer opportunities, housing or professional licensing, a person in possession of an applicant's criminal offender record information shall provide the applicant with the criminal history record in the person's possession, whether obtained from the department or any other source, (a) prior to questioning the applicant about his criminal history and (b) if the person makes a decision adverse to the applicant on the basis of his criminal history; provided, however, that if the person has provided the applicant with a copy of his criminal offender record information prior to questioning the person is not required to provide the information a second time in connection with an adverse decision based on this information. Failure to provide such criminal history information to the individual in accordance with this section may subject the offending person to investigation, hearing and sanctions by the board.

(d) Except as authorized by this section, it shall be unlawful to request or require a person to provide a copy of his criminal offender record information. Violation of this subsection is punishable by the penalties set forth in section 178.

(e) No employer or person relying on volunteers shall be liable for negligent hiring practices by reason of relying solely on criminal offender record information received from the department and not performing additional criminal history background checks, unless required to do so by law; provided, however, that the employer made an employment decision within 90 days of obtaining the criminal offender record information and maintained and followed policies and procedures for verification of the subject's identifying information consistent with the requirements set forth in this section and in the department's regulations.

No employer shall be liable for discriminatory employment practices for the failure to hire a person on the basis of criminal offender record information that contains erroneous information requested and received from the department, if the employer would not have been liable if the information had been accurate; provided, however, that the employer made an employment decision within 90 days of obtaining the criminal offender record information and maintained and followed policies and procedures for verification of the individual's information consistent with the requirements set forth in this section and the department's regulations.

Neither the board nor the department shall be liable in any civil or criminal action by reason of any criminal offender record information or self-audit log that is disseminated by the board, including any information that is false, inaccurate or incorrect because it was erroneously entered by the court or the office of the commissioner of probation.

(f) A requestor shall not disseminate criminal offender record information except upon request by a subject; provided, however, that a requestor may share criminal offender record information with individuals within the requesting entity that have a need to know the contents of the criminal offender record information to serve the purpose for which the information was obtained; and provided further, that upon request, a requestor shall share criminal offender record information with the government entities charged with overseeing, supervising, or regulating them. A requestor shall maintain a secondary dissemination log for a period of one year following the dissemination of a subject's criminal offender record information. The log shall include the following information: (i) name of subject; (ii) date of birth of the subject; (iii) date of the dissemination; (iv) name of person to whom it was disseminated; and (v) the purpose for the dissemination. The secondary dissemination log shall be subject to audit by the department.

Unless otherwise provided by law or court order, a requestor shall not maintain a copy, electronic or otherwise, of requested criminal offender record information obtained from the department for more than 7 years from the last date of

employment, volunteer service or residency or from the date of the final decision of the requestor regarding the subject.

(g) The department shall maintain a log of all queries that shall indicate the name of the requestor, the name of the subject, the date of the query, and the certified purpose of the query. A self-audit may be requested for no fee once every 90 days. The commissioner may impose a fee in an amount as determined by the secretary of public safety and security, for self-audit requests made more than once every 90 days. Upon request, the commissioner may transmit the self-audit electronically. Further, if funding is available and technology reasonably allows, the department shall establish a mechanism that will notify a subject, or an advocate or agent designated by the subject, by electronic mail or other communication mechanism whenever a query is made regarding the subject. The self-audit log and query log shall not be considered a public record.

(h) Notwithstanding the provisions of this section, the motor vehicle insurance merit rating board may disseminate information concerning convictions of automobile law violations as defined in section 1 of chapter 90C, or information concerning a charge of operating a motor vehicle while under the influence of intoxicating liquor that results in assignment to a driver alcohol program as described in section 24D of chapter 90, directly or indirectly, to an insurance company doing motor vehicle insurance business within the commonwealth, or to such insurance company's agents, independent contractors or policyholders to be used exclusively for motor vehicle insurance purposes.

(i) Notwithstanding any other provisions of this section, information indicating custody status and placement within the correction system shall be available to any person upon request; provided, however that no information shall be disclosed that identifies family members, friends, medical or psychological history, or any other personal information unless such information is directly relevant to such release or custody placement decision, and no information shall be provided if its release would violate any other provisions of state or federal law.

(j) The parole board, subject to sections 130 and 154 of chapter 127, the department of correction, a county correctional authority or a probation officer with the approval of a justice of the appropriate division of the trial court may, in its discretion, make available a summary, which may include references to criminal offender record information or evaluative information, concerning a decision to release an individual on a permanent or temporary basis, to deny such release, or to change the individual's custody status.

(k) Notwithstanding any other provision of this section or any other general or special law to the contrary, members of the public who are in fear of an offender may obtain from the department advance notification of the temporary or permanent release of an offender from custody, including but not limited to

expiration of a sentence, furlough, parole, work release or educational release. An individual seeking access to advance notification shall verify by a written declaration under the penalties of perjury that the individual is in fear of the offender and that advance notification is warranted for physical safety reasons.

(*l*) Any individual or entity that receives or obtains criminal offender record information from any source in violation of sections 168 through 175 of this chapter, whether directly or through an intermediary, shall not collect, store, disseminate, or use such criminal offender record information in any manner or for any purpose.

(m) Notwithstanding this section or chapter 66A, the following shall be public records: (1) police daily logs, arrest registers, or other similar records compiled chronologically; (2) chronologically maintained court records of public judicial proceedings; (3) published records of public court or administrative proceedings, and of public judicial administrative or legislative proceedings; and (4) decisions of the parole board as provided in section 130 of chapter 127.

(n) The commissioner, upon the advice of the board, shall promulgate rules and regulations to carry out the provisions of this section.

(o) Notwithstanding any other provision of this section or any other general or special law to the contrary, all gaming service employees shall be required to register with the investigations and enforcement bureau established in section 6 of chapter 23K but the Massachusetts gaming commission may, in its discretion, exempt certain gaming service employees by job position from the registration requirement. The commission and the bureau may require a gaming service employee to produce any information deemed necessary.

## MASSACHUSETTS RULES OF APPELLATE PROCEDURE

**Rule 27.1    Further Appellate Review**

**(a) Application; When Filed; Grounds.** Within 21 days after the date of the decision of the Appeals Court, any party to the appeal may file an application for further appellate review of the case by the Supreme Judicial Court. Such application shall be founded upon substantial reasons affecting the public interest or the interests of justice. Oral argument in support of an application shall not be permitted except by order of the court.

**(b) Contents of Application; Form.** The application for further appellate review shall contain, in the following order: (1) a request for further appellate review; (2) a statement of prior proceedings in the case (including whether any party is seeking a reconsideration or modification in the Appeals Court); (3) a short statement of

facts relevant to the appeal (but facts correctly stated in the decision of the Appeals Court shall not be restated); (4) a statement of the points with respect to which further appellate review of the decision of the Appeals Court is sought; and (5) a brief statement (consisting of not more than either 10 pages of text in monospaced font or 2,000 words in proportional font as defined in Rule 20(a)(4)(B)), including appropriate authorities, indicating why further appellate review is appropriate. A copy of the rescript and decision of the Appeals Court shall be appended to the application. In addition, if the Appeals Court entered a memorandum and order under M.A.C. Rule 23.0 which refers to another document, such as a brief or judge's findings and rulings, a copy of that document, or, if appropriate, the pertinent pages of that document, shall be appended to the application. The application shall comply with the requirements of Rule 20(a), and shall contain a certification of such compliance, including a statement of how compliance with the foregoing length limit was ascertained, as specified in Rule 16(k).

**(c) Response; Form.** Within 14 days after the filing of the application, any other party to the appeal may, but need not, file and serve a response thereto (consisting of not more than either 10 pages of text in monospaced font or 2,000 words of text in proportional font, as defined in Rule 20(a)(4)(B)) setting forth reasons why the application should or should not be granted. The response shall not restate matters described in Rule 27.1(b)(2) and (3) unless the opposing party is dissatisfied with the statement thereof contained in the application. A response shall comply with the requirements of Rule 20(a), and shall contain a certification of such compliance, including a statement of how compliance with the foregoing length limit was ascertained, as specified in Rule 16(k). A response may be filed in a different form as permitted by the court.

**(d) Filing; Service.** One copy of the application and of each response shall be filed in the office of the clerk of the full Supreme Judicial Court. No copy of the application or any response need be filed in the Appeals Court. Filing and service of the application and of any response shall comply with Rule 13.

**(e) Vote for Further Appellate Review; Certification.** If any 3 justices of the Supreme Judicial Court shall vote for further appellate review for substantial reasons affecting the public interest or the interests of justice, or if a majority of the justices of the Appeals Court or a majority of the justices of the Appeals Court deciding the case shall certify that the public interest or the interests of justice make desirable a further appellate review, an order allowing the application or the certificate, as the case may be, shall be transmitted to the clerk of the Appeals Court with notice to the lower court. The clerk of the Appeals Court shall forthwith transmit to the clerk of the full Supreme Judicial Court all documents filed in the case.

**(f) Briefs.** Any party may apply to the Supreme Judicial Court within 14 days after the date on which the appeal is docketed in the full Supreme Judicial Court for permission to file a new brief. If the application is granted, the new brief must be filed in accordance with the briefing schedule established by the clerk of the Supreme Judicial Court, and the court may impose terms as to the length and filing of such brief and any response thereto. If a new brief is filed, it will be considered in lieu of the Appeals Court brief. If permission to file a new brief is denied or not sought, cases in which further appellate review has been granted shall be argued on the briefs filed in the Appeals Court.

**(g) Equally Divided Vote on Further Appellate Review.** If, following allowance of an application for further appellate review, the justices of the Supreme Judicial Court are equally divided in opinion, unless a majority of the participating justices decides otherwise, the court shall issue an order noting such equal division, the effect of which shall be the same as if the court had denied the application for further appellate review.